**UNITED STATES of America**

v.

**Rufus BROWN, Rodney Franklin, Ama Baltimore,**

**Rufus Brown, Appellant in 92–3491,**

**Ama Baltimore, Appellant in 92–3562.**

**Nos. 92–3491, 92–3562.**

United States Court of Appeals, Third Circuit.

Argued May 13, 1993.

Decided Aug. 9, 1993.

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Michael L. Ivory, Asst. U.S. Atty. (argued), Pittsburgh, PA, for appellee.

Bruce A. Antkowiak (argued), Greensburg, PA, for appellant in No. 92–3491.

Thomas S. White, Federal Public Defender, Karen Sirianni Gerlach, Asst. Federal Public Defender (argued), Pittsburgh, PA, for appellant in No. 92–3562.

Before: BECKER, HUTCHINSON and ROTH, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal from a judgment in a criminal case presents questions of search and seizure law and of the sufficiency of the evidence to sustain a conviction for drug possession. Co-defendants Rufus Brown and Ama Baltimore were each convicted of three counts of possession with intent to distribute various controlled substances. The convictions rest entirely on evidence obtained in the course of a search of Brown's home pursuant to a warrant.

Brown's sole argument on appeal arises from the district court's denial of the defendants' motion to suppress the evidence seized pursuant to the warrant. Asserting that the warrant was procured by false information that was recklessly or intentionally supplied by the police officer-affiant, he contends that the district court abused its discretion in refusing to grant his request for *in camera* disclosure of the identity of the informant who allegedly provided the police with the information that was the basis for the warrant. Without such disclosure, Brown argues, he was unfairly prevented from establishing that the warrant was based on an untruthful affidavit. Baltimore joins this argument and argues further that, even without disclosure of the informant's identity, the defendants' request for an evidentiary hearing on the veracity of the warrant affidavit should have been granted pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We find these

suppression arguments without merit and will therefore affirm Brown's conviction.

We do find merit, however, in Baltimore's argument that the evidence is insufficient to support her conviction. At best, the evidence supports a finding that Baltimore resided in the Brown home and knew that drugs were present therein. However, the evidence does not support the jury's finding that she had dominion and control over the drugs. Hence, we will reverse Baltimore's conviction.

## I. FACTS AND PROCEDURAL HISTORY

On June 27, 1991, police executed a search warrant for Brown's home in Monroeville, Pennsylvania. The warrant was supported by the affidavit of Detective Anthony Hildebrand. The affidavit related that a confidential informant had told police that he was in the Brown residence within the previous 48 hours and had observed Brown and several other individuals therein packaging and preparing cocaine and heroin for sale. The affidavit also stated that the informant had proven to be reliable in the past by supplying information that had led to the arrest and conviction of several individuals for drug-related offenses.

When police arrived at the Brown home to execute the search warrant, they saw Rodney Franklin peering out of an upstairs window. Franklin attempted to flee the house from the rear, but was detained and then arrested after the search. Searching the house, the police seized large quantities of cocaine powder, cocaine base,[1] and heroin, as well as assorted drug paraphernalia.

While the search was in progress, two detectives positioned outside of the house observed Ama Baltimore arrive at the house in a taxi. Unaware of the police, Baltimore walked up to the house and inserted a key in the door. As she was about to enter, police arrested her and informed her of her Miranda rights. She was brought inside, where she was shown a pair of shorts that the police had found in an upstairs sewing room. Baltimore stated that the shorts were hers. The police then removed a switchblade knife from the shorts' pocket, which Baltimore also admitted was hers. She then stated, "but you can't arrest me because I am in my own house." Subsequently, Brown arrived at the house in his car and was placed under arrest.[2]

In total, the police seized from the Brown home some 6.10 grams of heroin, 57.13 grams of crack, and 1,020.38 grams of cocaine powder. The heroin was found in the refrigerator in the kitchen. Cocaine powder was found in a box in the kitchen closet and in various locations in the upstairs rear bedroom. Crack was also found in that bedroom. On a table in the same bedroom, police found a coffee grinder with cocaine residue on the blades, strainers with cocaine residue, and a balancing pan with a residue of cocaine, heroin, and quinine. Another coffee grinder with cocaine residue on the blades was found in the bedroom closet. Two respirator masks (which are commonly used to shield against dust generated by drug preparation) were found in a plastic garbage bag in the bedroom. One of the masks had lipstick marks on it, but no evidence linked the lipstick to any particular individual. Assorted plastic baggies, balloons, and other drug packaging materials, as well as various cutting agents, were also found in the rear bedroom. No drugs or drug paraphernalia were found in the upstairs sewing room in which Baltimore's shorts and switchblade were found.

Based on this evidence, a Grand Jury returned a four count indictment against Brown, Baltimore, and Franklin. Count 1 charged that on June 27, 1991, the trio con-

---

1. Cocaine base, or "crack" as it is known by its street name, is considered a different drug from regular cocaine powder. *See United States v. Jones*, 979 F.2d 317, 318–19 (3d Cir.1992). Crack has a different molecular structure than cocaine powder, is more addictive than cocaine powder, is used differently than cocaine powder, and has differing effects on the human body. *Id.*

2. The police searched Brown's car. However, all evidence seized from the automobile was suppressed by the district court after the government conceded that the warrant was not valid for a search of the automobile.

spired to distribute and to possess with intent to distribute cocaine, crack, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) & 846. Count 2 charged the three with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(ii). Count 3 charged the defendants with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii). Count 4 charged them with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C).

All three defendants pleaded not guilty and were tried before a jury in the District Court for the Western District of Pennsylvania. Prior to trial, the defendants moved to suppress the fruits of the search, alleging that the search warrant affidavit contained material falsehoods which were made either recklessly or intentionally by the affiant, Officer Hildebrand. Brown requested, at a minimum, that the court conduct an *in camera* review to determine the identity of and the precise information provided by the informant, whose tips were the basis for the warrant. After a hearing on all of the pretrial motions, the district court declined to order the *in camera* disclosure, and denied the defendants' motion to suppress. The three defendants proceeded to trial.

After all of the evidence was presented, the district court dismissed the conspiracy count as to all defendants and granted Franklin's Rule 29 motion for judgment of acquittal. The jury returned guilty verdicts as to Brown and Baltimore on the three remaining counts. The court denied Baltimore's post-trial motion for judgment of acquittal, and sentenced her to 120 months on count 3 and 87 months on counts 2 and 4, all three sentences to run concurrently. Brown was sentenced to 120 months on all three counts, the sentences to run concurrently.[3] Both defendants filed timely notices of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

3. The court was required by statute to impose a minimum sentence of at least 120 months on each defendant because they were convicted of

## II. THE SUPPRESSION ARGUMENTS

### A. *Denial of the Franks hearing*

■ Baltimore argues that the district court erred in denying the defendants' request for an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (a "*Franks* hearing"). In *Franks,* the Supreme Court held that

> where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676. If the defendant makes the requisite substantial showing for a *Franks* hearing and then, at that hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause. *Id.*

Officer Hildebrand's affidavit in support of the warrant stated that a confidential informant was in the Brown residence within the previous 48 hours and there observed Brown and someone named Rodger in possession of a large amount of cocaine that they were packaging for sale. The affidavit stated that the informant observed someone named Darryl Nelson and a man known as "Shumey" arrive at the house and provide heroin to cut, package, and sell, and that Brown told the informant that the drugs would be available for sale if he wanted to direct customers to them. In addition, the affidavit stated that the informant had proven reliable in the past by supplying information that led to the arrest and conviction of several individuals for possession with intent to distribute controlled substances. No information in the affidavit

possession of 50 grams or more of cocaine base, 21 U.S.C. § 841(b).

was based on independent police investigation of Brown.

In support of their motion to suppress the evidence and their accompanying request for a *Franks* hearing, the defendants offered the affidavit of Brown, who denied that he knew anyone fitting the affidavit's description of the person named Rodger, denied that either Darryl Nelson or Shumey were ever at his house at any time in 1991, and denied that he had ever conversed in his home with any person fitting the description of the informant. Brown also filed the affidavit of a private investigator who set forth the transcript of a taped interview of Shumey, in which Shumey admitted knowing Brown, but denied that he was ever in the Brown residence around June 27, 1991, or at any other time.

In addition, the defendants produced evidence to show several inaccuracies in the portion of the affidavit relating the informant's reliability. They submitted records showing that three of the individuals identified by the affidavit as having been convicted of possession *with intent to distribute* controlled substances in fact had been convicted only of simple possession.[4] Officer Hildebrand testified that he had prepared the affidavit for the search of the Brown home in haste and had derived the information in the reliability section from his personal notes and records.

After considering the defendants' offer of proof, the district court concluded that the Brown affidavit and the affidavit of the police investigator, if believed, failed to show the *affiant's* deliberate or reckless untruthfulness but simply impeached the veracity of the *informant*. Further, the court found that the inaccuracies in the affidavit's reliability section were not sufficiently material to either defeat the affidavit's assertion of the informant's reliability or to support an inference that any of the affiant's other state-ments were deliberately or recklessly false. Accordingly, the court concluded that because the defendants had not made a substantial preliminary showing of the affiant's untruthfulness, they were not entitled to a *Franks* hearing.

We agree. It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing. The Supreme Court made clear throughout *Franks* that a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.

In *United States v. Schauble,* 647 F.2d 113 (10th Cir.1981), the Court of Appeals for the Tenth Circuit faced a suppression argument similar to that raised by the defendants here. Schauble had appealed the district court's denial of his motion to suppress, specifically contending that he should have been granted a *Franks* hearing or that the court at a minimum should have granted his request for *in camera* disclosure and/or interview of the confidential informant who was the source of the information in the affidavit. Schauble had offered his own affidavit as well as the affidavit of another person who was with him in his house during the 48 hours before the search, both stating that, contrary to the assertions in the search affidavit, the only visitor to the house during that time span came no further than the front porch and could not physically have seen inside the house from the porch.

The Tenth Circuit affirmed the district court's denial of the defendant's request for a *Franks* hearing, holding that under *Franks* the defendant must first make a substantial showing that the *affiant* knew of or recklessly disregarded the informant's lack of truthfulness, and that it was not enough to show simply that the *informant* may have lied. *Schauble,* 647 F.2d at 117; *see also United*

---

4. Other evidence showed that the informant had provided no information at all about one of the individuals whom the affidavit asserted was convicted as a result of the informant's tips. Rather, that person was convicted because he happened to be present in the home of a suspect during a search pursuant to a warrant obtained via information from the informant.

Records submitted by the defendants also showed that in another search warrant affidavit submitted by Officer Hildebrand, he had stated that an informant had provided information that led to the arrest and conviction of another individual for possession with intent to distribute heroin, where, in fact, that person was arrested for and convicted only of simple possession.

*States v. Perdomo,* 800 F.2d 916, 921 (9th Cir.1986) (affirming denial of *Franks* hearing where proof offered reflected only on veracity of informant and not on veracity of affiant); *United States v. Southard,* 700 F.2d 1, 7–12 (1st Cir.) (affirming denial of *Franks* hearing because defendants had failed to offer proof of affiant's reckless or intentional untruthfulness), *cert. denied,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Like Schauble's inadequate offer of proof, the affidavits of Brown and the private investigator do not support an inference that Officer Hildebrand was recklessly or deliberately untruthful. Even if the events in Brown's home never occurred as allegedly reported by the informant, that shows little or nothing about the affiant's veracity, for it is at least as likely that the officer honestly, or perhaps negligently, believed an untruthful informant as it is that the affiant himself was untruthful. In fact, the officer's veracity is more probable than the veracity of the informant since the officer provided testimony under oath. At all events, *Franks* and its progeny make clear that the defendant must make a substantial showing that the affiant "knew of or recklessly disregarded the informant's untruthfulness," *Schauble,* 647 F.2d at 117, and the defendants' affidavits fail to constitute such a showing.

■ Nor do the inaccuracies in the affidavit's section on the informant's reliability support the defendants' request for a *Franks* hearing. Search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity ... have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *see also Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 2330–31, 76 L.Ed.2d 527 (1983). Officer Hildebrand's reliance on his personal notes, rather than engaging in a time-consuming search of criminal records, to assert facts supporting the reliability of the informant was not reckless, especially since the short useful life of an informant's drug-related tips required that the officer produce the search affidavit in great haste. In short, the inaccuracies in the Hildebrand affidavit's reliability section do not support an inference that Hildebrand was recklessly or deliberately untruthful in that portion or any other portion of the affidavit, as is required by *Franks.*[5]

For all of these reasons, we conclude that the district court did not err in denying the defendants' request for a *Franks* hearing.[6]

### B. *Nondisclosure of the informant's identity*

■ Both Brown and Baltimore argue that, even if they were unable to make a

---

5. Moreover, even if the misstatements in the affidavit's reliability section were reckless or intentional, they are not sufficiently material to defeat probable cause. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676 (to support suppression of evidence seized pursuant to a warrant, the deliberately or recklessly false statements in the affidavit must be necessary to a finding of probable cause). A search affidavit need only set forth facts that, in their totality, allow a magistrate to conclude that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. If the inaccuracies in the Hildebrand affidavit's reliability section were excised from the affidavit, the remaining accurate statements that the informant's tips had led to the arrest and conviction of several persons for possession of controlled substances would be sufficient to support the probable reliability of the informant, and the affidavit as a whole would still provide a "substantial basis for believing" that drugs and drug paraphernalia were in the Brown home, *id.* at 238–89, 103 S.Ct. at 2332 (internal quotations and citation omitted). *See*

*United States v. Calisto,* 838 F.2d 711, 715 (3d Cir.1988) (warrant must be upheld if, after excising any deliberately or recklessly false statements, warrant was still based on probable cause); *Southard,* 700 F.2d at 9 (assuming misstatements in search affidavit were intentional or reckless, they were not material to a finding of probable cause and therefore were not grounds for a *Franks* hearing).

6. The defendants also argue that the boilerplate language in the affidavit (its similarity to other search warrant affidavits prepared by the same officer) calls into question the truthfulness of the allegations therein. This argument is without merit. As the district court stated, the similarity in Hildebrand's affidavit "appears only to reflect the detective's training and writing style, rather than his truthfulness." *See United States v. Savides,* 658 F.Supp. 1399, 1403 (N.D.Ill.1987) (similarity between affidavits prepared by same officers suggested personal investigative approach and was not enough to constitute substantial preliminary showing for *Franks* hearing).

substantial preliminary showing of the affiant's untruthfulness sufficient to warrant a *Franks* hearing, the district court abused its discretion in refusing to grant their request for *in camera* disclosure of the informant's identity. We review the district court's decision not to order disclosure of an informant's identity for abuse of discretion. *United States v. Vargas*, 931 F.2d 112, 116 (1st Cir. 1991); *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir.1986).

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court set forth standards for determining when a defendant's request for disclosure of a government informant's identity should be granted. The Court held that "[w]here disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the [government's] privilege [to withhold disclosure of the informant's identity] must give way." *Id.* at 60–61, 77 S.Ct. at 628. The Court emphasized, however, that protecting an informant's identity serves important law enforcement objectives, most significantly, the public interest in encouraging persons to supply the government with information concerning crimes. *Id.* at 59, 77 S.Ct. at 627; *see also McCray v. Illinois*, 386 U.S. 300, 308–09, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967); *Vargas*, 931 F.2d at 115.

The Court in *Roviaro* left substantial leeway to the trial courts to determine on a case-by-case basis whether disclosure is warranted, instructing the courts to weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 59, 62, 77 S.Ct. at 628, 629. As for appellate review of a trial court's decision to deny a defendant's request for disclosure, the Court stated: "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629.

As discussed above, *supra* Part II.A., the defendants here have not made a preliminary showing that the search affidavit was either deliberately or recklessly false so as to warrant a *Franks* hearing. Nonetheless, they seek disclosure of the informant's identity in the hope that disclosing the identity of the informant will lead to evidence that will help them make a *Franks* showing. In these circumstances, we believe that the *Roviaro* balance will tend to tip against disclosing the informant's identity. A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be "relevant and helpful to the defense ... or is essential to a fair determination" of the case, *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 628. *See Vargas*, 931 F.2d at 116 (holding that district court did not abuse its discretion in denying disclosure of informant's identity where court impliedly determined that disclosure was not necessary for defense and would imperil safety of informant or interfere with police investigations); *United States v. Allen*, 566 F.2d 1193, 1194 (3d Cir.1977) (affirming denial of defendant's motion to compel disclosure of informant's identity for purposes of proving lack of reasonable cause for arrest because defendant had not shown that disclosure was necessary to the defense), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978).

In *Franks*, the Court left open "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant *once a substantial preliminary showing of [the affiant's] falsity has been made.*" 438 U.S. at 170, 98 S.Ct. at 2684 (emphasis added). While expressly not reaching the issue, the Court's statement suggests that *if* revelation of the identity of an informant is ever required in the context of a motion for a *Franks* hearing, it would only be *after* the defendant made a substantial preliminary showing of the affiant's reckless or intentional disregard for the truth. Several courts of appeals have, at least implicitly, so held. *See, e.g., United States v. Kiser*, 716 F.2d 1268, 1271–73 (9th Cir.1983) (holding that defendant was entitled to disclosure of informant but only because defendant had first made substantial preliminary

showing of affiant's untruthfulness entitling defendant to a *Franks* hearing); *Schauble,* 647 F.2d at 116–17 (holding that because the defendant had not made a substantial showing of the affiant's untruthfulness, the district court did not abuse its discretion in denying defendant's request for *in camera* disclosure of informant whose tip was basis for search warrant). Similarly, we hold here that, because the defendants' offer of proof failed to show that the affiant was untruthful, the district court did not abuse its discretion in refusing to order disclosure of the informant.[7]

Since the nondisclosure of the informant's identity is the only issue raised by Brown, and since we find it without merit, we will affirm his conviction. Although we have also rejected Baltimore's suppression arguments, we must consider her separate argument that the evidence is insufficient to support her conviction.

### III. SUFFICIENCY OF THE EVIDENCE

In reviewing a jury verdict for sufficiency of the evidence, we "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Frorup,* 963 F.2d 41, 42 (3d Cir.1992); *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Baltimore contends that the evidence cannot support the jury's finding that she possessed the drugs found in the Brown home. Although the government need not show proof of actual possession, to show "constructive" possession of an illegal substance the government must submit sufficient evidence to support an inference that the individual "knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence." *United States v. Iafelice,* 978 F.2d 92, 96 (3d Cir.1992) (citations omitted); *see also United States v. Davis,* 461 F.2d 1026, 1035 (3d Cir.1972). "Such dominion and control need not be exclusive but may be shared with others." *Davis,* 461 F.2d at 1035. However, "mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property, is insufficient to support a finding of possession." *Id.* at 1036; *see also United States v. Walker,* 993 F.2d 196, 200 (9th Cir.1993).

The circumstantial evidence offered by the government to support a finding that Baltimore both knew of and exercised dominion and control over the drugs found in the Brown residence is as follows:

1. She possessed a key to the house.

2. She arrived at the house during the search and attempted to enter the house, using her key.

3. A pair of women's shorts and a switchblade in the shorts pocket were found in the house, in a room in which no drugs were found, and Baltimore admitted that they both belonged to her.

4. After admitting that the switchblade was hers, Baltimore said to police officers: "But you can't arrest me because I am in my own house."

---

7. We recognize that it is extremely difficult for defendants in Brown's and Baltimore's situation to make a substantial showing of a police officer-affiant's perjury or recklessness where the search affidavit rests entirely on information allegedly provided by an undisclosed informant. As the Court of Appeals for the Ninth Circuit has stated: "A defendant in [this] situation has a difficult evidentiary problem. To make a substantial preliminary showing, he must establish a negative—that the informant does not exist—or uncover the informant's probable identity and the text of his information, despite considerable Government

efforts to protect both." *Kiser,* 716 F.2d at 1271; *see also* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(d) (1987 & Supp.1992) (defendant may be handicapped by combined effect of government's informer privilege and burden of making a threshold *Franks* showing). However, our holding does not foreclose the possibility that there may be circumstances in which a request for disclosure of an informant in order to enable the defendant to make a *Franks* showing appropriately may be granted by a district court, i.e., would not be reversible for abuse of discretion.

5. The physical evidence showed and a government witness testified that the house was being used as a "cut house," that is, a house where large quantities of drugs were stored, cut, and packaged for sale.[8]

Baltimore argues that none of the government's evidence links her to the drugs in the house. She emphasizes (as she did at trial) that none of her fingerprints were found on any of the drugs or drug paraphernalia seized by the government (whereas co-defendant Brown's fingerprints were found), that her shorts and switchblade were in a room in which no drugs were found, that she was arrested *prior* to entering the house, and that the deed to the house made it clear that Brown was its sole owner. The government responds that the combination of Baltimore's possession of the key to Brown's house, her arrival at the house, her admission that it was her house, and the fact that the house was a cut house was sufficient for the jury to reasonably infer that Baltimore exercised dominion and control over the house *and* the drugs found therein.[9] We conclude that

while the evidence may be sufficient to show that Baltimore was residing at the Brown home and that she knew that drugs were in the house, the evidence is not sufficient to support a finding that she exercised dominion and control over the drugs.

A recent decision by the Court of Appeals for the Ninth Circuit addresses similar facts and supports our conclusion here. In *United States v. Vasquez–Chan,* 978 F.2d 546 (9th Cir.1992), the court reviewed drug possession and drug conspiracy convictions against a housekeeper and a house guest who were present and residing in a house where large quantities of drugs were found. The housekeeper had been living in the house for three months; she admitted to knowing that a large quantity of cocaine was present in the house; she was present when a large drug delivery was made to the house; she carried a false passport; and her name was listed on an electric bill for the residence. The evidence linking the house guest to the drugs was arguably stronger: she knew the cocaine was present, she and her baby had been

8. The government also submits that the evidence of Baltimore's prior drug-related offense supports the jury's conclusion that she had dominion and control over the drugs. On the third day of trial, the district court admitted, over Baltimore's objection, testimony of a police officer that approximately seventeen months before the events at issue, he had arrested Baltimore and that he was present when she later pleaded guilty to possession with intent to distribute crack. Although the court admitted the evidence, it made clear, in accordance with Fed.R.Evid. 404(b) and the law of this circuit, that the prior crime evidence could not be used by the jury as evidence of Baltimore's bad character or her propensity to commit a drug-related offense. *See United States v. Sampson,* 980 F.2d 883, 887 (3d Cir.1992); *United States v. Echeverri,* 854 F.2d 638, 644 (3d Cir.1988). More importantly, the court explained in its cautionary instruction to the jury that the prior crimes evidence could not be used to show that Baltimore was more likely to have committed the acts charged (i.e., possessed the drugs found in Brown's home), but could only be considered to show Baltimore's state of mind (i.e., whether she intended to distribute the drugs, assuming possession). As Baltimore argues, intent to distribute was never in dispute because, assuming the government could show possession, intent to distribute could be inferred from the large quantity of drugs and drug paraphernalia found in the house. *See United States v. Rodriguez,* 961 F.2d 1089, 1092 (3d Cir.1992).

The only real issue in dispute was whether Baltimore had constructive possession of the drugs, i.e. whether she had knowledge of the drugs presence in the house, and if so, whether she had dominion and control over them. And as the district court told the jury, the prior crimes evidence is not probative of whether Baltimore had dominion and control over the drugs. Accordingly, we do not consider the prior offense as additional evidence in support of the jury's finding of possession.

Baltimore argues that the district court committed reversible error in admitting her prior crime under Fed.R.Evid. 404(b), and that, even if the prior crimes evidence were relevant under Rule 404(b) to show intent, the district court abused its discretion in admitting it under Fed. R.Evid. 403 because its strong potential for unfair prejudice significantly outweighed its probative value. In view of our conclusion that, even with the prior crimes evidence, the evidence in total is not sufficient to sustain Baltimore's conviction, *see infra,* we need not reach these arguments.

9. Lipstick was found on one of the respirator masks seized by the government, and the government argued at trial that this was additional evidence linking Baltimore to the drugs. However, as Baltimore argued at trial, the lipstick stains were never traced to her and therefore have no probative value linking her to the drugs or drug paraphernalia.

sleeping in a small room where cocaine containers were stored, and her fingerprints were found on six of the containers. On the other hand, the evidence also showed that persons other than these two defendants had control over the cocaine found in the house and were involved in a larger drug conspiracy.

In reversing the drug convictions for insufficient evidence, the court explained that the defendants' knowledge of and proximity to the drugs was not enough to sustain convictions for possession of the drugs because the evidence failed to support an inference that either of the defendants "had the power to exercise dominion and control over the narcotics." 978 F.2d at 550. The court explained further that the defendants' conduct was perfectly consistent with that of innocent persons residing in the home with no stake in the drug distribution activities that were taking place in the residence. *Id.* at 551. Similarly, we believe that the evidence against Baltimore is consistent with that of someone with access to or residing at the Brown residence, but with no control over the drugs or drug packaging activities of Brown and others occurring therein.

The recent decision by the Court of Appeals for the D.C. Circuit in *United States v. Zeigler,* 994 F.2d 845 (D.C.Cir.1993), also supports this conclusion. Zeigler was convicted of possession with intent to distribute crack cocaine. The evidence showed that she was arrested in the bedroom of a large apartment owned by her boyfriend during a search of the apartment in which the police found various firearms, ammunition, large amounts of cash, bags of marijuana, and a locked briefcase containing crack cocaine, a razor blade, a firearm, $740 in cash and two money orders. The evidence established that Zeigler had been living in the apartment for at least several months. However, she was not found in the room where the crack cocaine was found; nor was there any other evidence linking her to it.

The D.C. Circuit found that the evidence was not sufficient to show that Zeigler knew of the crack. Further, the court held:

> Even if there were evidence of Zeigler's knowledge of the cocaine, the govern-

ment's case would still fall short. Zeigler was near the cocaine, down the hallway from it when the police arrived. But mere proximity or accessibility to contraband will not support a conclusion that an individual had knowing dominion and control over it. *Those who spend considerable time in another's apartment, even those who "live" there, do not for that reason possess everything on the premises. No one would say, for instance, that Zeigler "possessed" [her co-defendant's] spare clothing simply by knowing the contents of his dresser.*

*Zeigler,* 994 F.2d at 848 (emphasis added) (internal quotations and citations omitted). Applying this reasoning to Baltimore's case, we find that even if she knew that the drugs were in the house, the evidence does not support a finding that she had dominion and control over those drugs.

Although we have not found a similar case in this circuit, our cases on constructive possession of contraband support our conclusion. In *United States v. Iafelice,* 978 F.2d 92, 95–98 (3d Cir.1992), the defendant's ownership and operation of a vehicle used to transport a package of drugs that were ultimately delivered to undercover agents was a significant factor in establishing his dominion and control over the drugs, but was not sufficient on its own. We explained that the surrounding circumstances, including the defendant's role in driving the car that transported both the drugs and several participants in the drug deal to the place where the transaction occurred, his suspicious manner of driving, his use of a beeper during the drug transaction, and his role in opening the trunk to enable another participant to remove the drug package, all helped establish both his knowledge that the package contained drugs and his dominion and control over the drugs. *Id.* at 97–98.

In *United States v. Martorano,* 709 F.2d 863 (3d Cir.1983), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983), another case in which we held that the evidence was sufficient to support a finding of constructive possession of controlled substances, the evidence linking the defendant to the drugs was also significantly greater than the evidence

relied on by the government here. In *Martorano*, the evidence showed that the defendant paid $104,000 for the purpose of obtaining a large quantity of phenyl–2–propanone (P–2–P), a controlled substance. Rather than receiving the drugs on the spot, he was given the keys to the van in which the drugs were contained and was told of the van's location. Thus, although he did not *actually* possess the drugs, we found that the evidence was sufficient for the jury to have reasonably concluded that the defendant had dominion and control over the drugs found in the van.

This court's sufficiency analyses in both *Iafelice* and *Martorano* make clear that simple ownership or control of a vehicle is not enough on its own to establish constructive possession of drugs found therein, but rather, additional evidence must link the defendant to the drugs. Likewise, mere residence in a house is not sufficient to support a finding of dominion and control over drugs found therein. In fact, when drugs are found in a multi-room home, as opposed to a vehicle, the evidence linking the defendant to the drugs arguably must be even stronger. At all events, Baltimore's possession of the key to Brown's home, her arrival at the house, and her statement that it was her house, to the extent that these facts support findings that she resided at and had some control *over the house* and that she knew of the drugs' presence in the house, do not support an inference that she had dominion and control over the drugs found therein.

In *United States v. Davis*, 461 F.2d 1026 (3d Cir.1972), this court upheld, in the face of a sufficiency challenge, the defendant's conviction for possession of heroin seized in the apartment in which she resided. *Davis*, however, is distinguishable from this case. The defendant in *Davis* was present with her co-defendant in the room and next to the table where the drugs and drug paraphernalia were found. Moreover, the evidence showed that someone had recently been in the process of packaging the drugs and that,

while the police were forcing entry, the occupants had attempted (unsuccessfully) to destroy the drugs. *Id.* at 1034–36. This court held that a jury could reasonably have inferred from all of this evidence that the defendant knowingly had dominion and control over the drugs.[10] The nexus between Baltimore and the drugs seized in the Brown home is significantly less evident: neither she nor any of her possessions were found in any of the rooms where the drugs were seized, none of her fingerprints were found on any of the drugs or drug paraphernalia, and there is no other evidence that she ever exerted any control over the drugs or the drug paraphernalia.

The government argues that because the evidence showed that the house was a so-called "cut house," where large quantities of drugs were cut and packaged for sale, the jury could have reasonably concluded that when Baltimore arrived there with the key and attempted to enter, she must have had an intent to participate in drug distribution. To support this position, the government relies largely on *United States v. Brett*, 872 F.2d 1365 (8th Cir.), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989), in which the Court of Appeals for the Eighth Circuit upheld a defendant's conviction of possession with intent to distribute cocaine in the face of a sufficiency challenge, in part because the defendant was found with the key to the crack house in which the drugs were found.

But the government's evidence against the relevant defendant in *Brett* was much stronger than the evidence against Baltimore. First, the key possessed by the *Brett* defendant was a key to a *crack* house, that is, a dwelling used *exclusively* for the use and distribution of drugs. *See Brett*, 872 F.2d at 1368 (the dwelling was a "fortified drug house. While the utilities were on, the house did not appear to be lived in. It had no refrigerator, no stove, no food, no telephone, and there was no clothing present."). Pos-

---

**10.** *See also United States v. Staten*, 581 F.2d 878, 884–86 (D.C.Cir.1978) (evidence that defendant was in small one-room apartment with regular occupant directly alongside large amount of drugs, contraband, and drug paraphernalia; that defendant had key to the apartment; and that, before police had achieved forced entry, the occupants had attempted to hide the drugs, was sufficient to support constructive possession).

session of the key to the crack house would indicate a much greater likelihood that the defendant was involved with the drugs found therein than Baltimore's possession of a key to Brown's home, which was used not only for drug-related activity but also as a residence.

Moreover, the appellant in *Brett* was found fleeing from the crack house when the police arrived; he falsely identified himself at the time of arrest; and he was found at the time of his arrest with $3,746 in cash in his possession, but would not explain how he had obtained the money. *Id.* at 1368–69. In short, his possession of the key to the house was only one among a number of factors all of which supported the conclusion that he knew about and had dominion and control over the drugs found in the crack house. *See also Iafelice,* 978 F.2d at 97 (ownership and control of vehicle must be considered "in the context of the surrounding circumstances, which may either reinforce or undercut" a finding of constructive possession of drugs found therein).[11]

At best, the evidence against Baltimore supports a finding that she resided at the Brown home and knew drugs were in the house. However, the evidence, viewed in the light most favorable to the government, cannot support a finding that Baltimore had dominion and control over those drugs.

For the reasons set forth above, Baltimore's conviction will be reversed.

---

**11.** Similarly, in *United States v. Hager*, 969 F.2d 883 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992), another case relied on by the government, the evidence against the defendant linking him to the cocaine found in his sister's apartment was much stronger than the evidence against Baltimore in this case. Hager not only possessed the key to the apartment (which he had been given by his sister), but his fingerprints were found on the jars containing cocaine in the apartment, and a notebook found in Hager's car contained cryptic references to the containers in the apartment where the drugs were found hidden. Based on *all* of this evidence, the court concluded that the government had shown a sufficient nexus between the defendant and the narcotics found in the apartment to support a finding of constructive possession. 969 F.2d at 888.