**UNITED STATES of America,**

v.

**Michael SANCHEZ, Appellant.**

No. 02–2496.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) April 25, 2003.

Decided May 7, 2003.

Before SCIRICA, Chief Judge,[*]
AMBRO and GARTH, Circuit Judges.

OPINION

GARTH, Circuit Judge.

Appellant Michael Sanchez challenges his sentence for possession with the intent to distribute cocaine base (crack). We will affirm.

**I.**

Because we write solely for the benefit of the parties, we recount the facts and the procedural history of the case only as they are relevant to the following discussion.

Sanchez had agreed to sell a controlled substance to a buyer in Delaware. This transaction was set for the morning of August 9, 2001. On that morning, Sanchez traveled by train from his home in Philadelphia to Wilmington, Delaware. Shortly after Sanchez disembarked from the train in Wilmington, Drug Enforcement Agency (DEA) Special Agent David Hughes, who received a tip from confidential informants about the sale, approached Sanchez. Hughes conducted a pat-down search of Sanchez.[1] Hughes discovered that San-

---

[*] Judge Scirica became Chief Judge on May 4, 2003.

1. Sanchez claimed that he had not consented to the search.

chez was carrying in his pocket a bag later determined to contain about 110 grams of crack cocaine.

The Government charged Sanchez with one count of possession with the intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Sanchez filed several pretrial motions, including a motion to suppress the evidence (the crack) found by Hughes. The District Court, following a hearing, denied the motion to suppress.

Following two proffer sessions with the DEA, Sanchez pled guilty to the charge against him on January 4, 2002. The Government indicated that it would oppose application of the "safety valve" provision, found in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because, in its view, Sanchez had not been fully truthful.

The District Court held a sentencing hearing on May 16, 2002. The District Court denied Sanchez's motion for reconsideration of the denial of the motion to suppress and denied Sanchez's motion for disclosure of information about the confidential source. The court proceeded to hear testimony from Hughes, Sanchez, and other witnesses. After hearing this testimony, the District Court determined that Sanchez had not carried his burden of proving that he had been truthful in his proffer sessions, and therefore denied application of the "safety valve" and imposed sentence. In a judgment dated May 17, 2002, the District Court sentenced Sanchez to a ten-year term of imprisonment, the mandatory minimum sentence for the offense of conviction.

Sanchez's timely appeal followed.

## II.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

On appeal, Sanchez raises two issues. First, Sanchez argues that the District Court erred in its factual determinations underlying its decision not to apply the "safety valve." Second, Sanchez claims that the District Court erred in denying his motion for further disclosure concerning the confidential source.

### A. "Safety Valve"

■ Under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, commonly called the "safety valve," there is an exception to statutory minimum sentences otherwise required for certain drug-related crimes. To qualify for the "safety valve," a defendant must meet five requirements. As the "safety valve" provision states:

> Notwithstanding any other provision of law, in the case of an offense under section 401 ... of the Controlled Substances Act (21 U.S.C. § 841 ...) ... the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission ... without regard to any statutory minimum sentence, if the court finds at sentencing ... that
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

*(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.*

18 U.S.C. § 3553(f) (emphasis added).[2]

In this case, the only dispute is over whether Sanchez met the "truthfulness" requirement, the text of which is italicized above. We will not disturb a district court's factual findings concerning whether a defendant has met the truthfulness requirement of the "safety valve" unless those findings are clearly erroneous. *See United States v. Sabir,* 117 F.3d 750, 752 (3d Cir.1997).

The key factual issue in this case that is determinative of whether Sanchez met the truthfulness requirement relates to how Sanchez acquired the crack that he took to Wilmington for the drug transaction. Sanchez claimed in his proffers to the Government investigators that he provided one of the Government's confidential informants with cocaine in powder form during the morning of August 9, 2001; and that this informant later met Sanchez prior to his boarding the train to Wilmington and handed him a bag that contained the crack.

The Government's position differs from Sanchez's. According to the Government's confidential informant, Sanchez possessed the bag of crack the entire morning. The Government asserts that the informant did not (as Sanchez claims) receive a bag of powdered cocaine from Sanchez during the morning of August 9. Nor did the informant later provide Sanchez with a bag of crack.

The District Court did not accept Sanchez's version of events. As the District Court concluded:

> I am not going to find that he has been truthful. I am not in a position to find that he has carried the burden of showing he has been truthful. I am not convinced that it's truthful or correct that he delivered powdered cocaine to the two informants and had them prepare crack cocaine.

Tr. of Sentencing Hearing at 87 (App.300).

On appeal, Sanchez argues that the District Court should have found his version of events truthful for a number of reasons. First, he argues that he had no motive or incentive to provide anything but a truthful proffer. Second, he states that because, based on an expert's testimony, there was enough time for the informant to transform cocaine into crack, Sanchez's explanation could be true. Third, he argues that the testimony of Special Agent Hughes was "highly questionable" because his prior testimony in the suppression hearing was contradicted by documents that Sanchez's counsel later obtained. Fourth, Sanchez says that he could have been genuinely mistaken or confused in thinking that he had cocaine when in fact he had crack.

These assertions need not be examined in exhaustive detail. Sanchez has not met his high burden on appeal of demonstrating that the District Court's determination was clearly erroneous. At best, Sanchez shows that the evidence he introduced during the sentencing hearing could allow for potentially plausible alternatives to the determinations of the District Court. But Sanchez has not shown—and, it would ap-

---

**2.** U.S.S.G. § 5C1.2 sets forth the five requirements of 18 U.S.C. § 3553(f) "verbatim."

pear, cannot show that the District Court's factual determinations, made after hearing testimony and evaluating the credibility of witnesses, were clearly erroneous. As we have said, review for clear error "is more deferential with respect to determinations about the credibility of witnesses, and when the district court's decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." *United States v. Igbonwa,* 120 F.3d 437, 441 (3d Cir.1997) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 121 (1998).

Under the circumstances presented here, the District Court's factual determination about Sanchez's truthfulness was not clearly erroneous.[3]

### B. Disclosure Regarding Confidential Source

■ Sanchez also argues that the district court erred in denying his motion for disclosure of particular information about one of the Government's confidential sources. Specifically, Sanchez sought information about (1) how the Government compensated this informant and (2) about other cases in which the informant had provided the Government with information.

### 1. Request for information concerning Sanchez's compensation

We interpret the underlying basis of Sanchez's motion for disclosure of information pertaining to the compensation of a confidential source to be a due process claim under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[4] As we have recently recited:

> To state a valid *Brady* claim, a plaintiff must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense.... Evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense.... Evidence that may be used to impeach may qualify as *Brady* material.

*Riley v. Taylor,* 277 F.3d 261, 301 (3d Cir.2001) (en banc) (citations omitted). "To the extent appellant[ ] contend[s] that the government's actions violated the rule set forth in *Brady v. Maryland* ... we review the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Ramos,* 27 F.3d 65, 67 (3d Cir.1994) (citation omitted). In the present setting, since Sanchez pled guilty, we focus on whether the sentencing outcome would differ.

**3.** Sanchez also suggests that even if we sustain the District Court's finding that he had not carried his burden of showing that he was truthful, the origin of the crack should not be considered material with respect to the offense he committed for purposes of the "safety valve" provision. As the District Court explained, however, the origin of the crack "was a significant fact in the chain of events that took place that day." Tr. of Sentencing Hearing at 88–89 (App.301–02). The "safety valve" provision does not speak in terms of materiality, but rather states that the defendant must "truthfully provide[ ] to the Government *all information and evidence* the de-

fendant has *concerning the offense* or offenses that were *part of the same course of conduct or of a common scheme or plan.*" 18 U.S.C. § 3553(f)(5) (emphasis added). We are satisfied that where and how Sanchez obtained the crack falls comfortably within the category of information that the truthfulness requirement covers: "all information and evidence ... concerning the offense" for which Sanchez was convicted, possession with intent to deliver crack.

**4.** We note that Sanchez does not cite *Brady* in his brief, but only adverts obliquely to "due process implications." Sanchez Br. at 28.

Sanchez sought information about the method in which the Government compensated the confidential informant, presumably to identify any incentives that would operate to influence the informant's statements to the Government concerning Sanchez. The Government sent a letter to Sanchez's counsel in which the Assistant U.S. Attorney, Keith M. Rosen, wrote: "It is our understanding ... that the payments to the informants in this case were not based on either (1) the type of controlled substance at issue, or (2) the potential length of the sentence to be imposed on the defendant." App. 21.

Because Sanchez's request for information underlying this representation "offered nothing beyond [his] speculation" that the information "might have contained *Brady* material," *Ramos*, 27 F.3d at 71, there is no *Brady* violation. In light of this representation, there is no reason to think that provision of such information would have changed the outcome of the "safety valve" inquiry. Without anything more than Sanchez's speculation, we cannot conclude that due process was violated.

### 2. Request for docket numbers

█ Sanchez also sought the docket numbers for other cases in which the Government received assistance from the informant. Sanchez hoped to use these docket numbers to reach defense attorneys in those cases to learn whether the informant's credibility had been at issue in those cases.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court outlined a balancing test in cases involving confidential informants. As the *Roviaro* Court explained:

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-

disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62. In *United States v. Brown*, 3 F.3d 673 (3d Cir.1993), we explained that a district court has "substantial leeway" in deciding whether to disclose an informant's identity, and that we review this issue for a district court's abuse of discretion. *Id.* at 679–80.

Sanchez argues that because he is aware of the informant's identity, the *Roviaro* balancing does not apply. But, as we have explained, "the Supreme Court in *Roviaro* certainly did not indicate that the informant's privilege terminated when the identity of an informer, although already known to someone who would have reason to be vindictive, was still unknown to others who would have cause to retaliate." *United States v. Brenneman*, 455 F.2d 809, 810 n. 1 (3d Cir.1972) (per curiam).

If the Government were to reveal the docket numbers of other cases in which the informant had been involved to Sanchez's counsel so that he could communicate with defense counsel in those other cases, there is a concern that these contacts could have caused the identity of the informant to become known to "others who would have cause to retaliate" against the informant. *Brenneman*, 455 F.2d at 810 n. 1. We therefore cannot say that the district court abused its discretion in denying Sanchez's motion for disclosure of the docket numbers.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.