NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2793

UNITED STATES OF AMERICA

v.

LUKE GATLIN,

Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal Action No. 1-06-cr-00028-001)
District Judge: Honorable Gregory M. Sleet

Argued March 24, 2010

Before: RENDELL, AMBRO, and FUENTES, Circuit Judges

(Opinion filed: June 15, 2010)

Robert D. Goldberg, Esquire (Argued)
Biggs & Battaglia
921 Orange Street
P.O. Box 1489
Wilmington, DE   19899

       Counsel for Appellant

Seth M. Beausang, Esquire (Argued)
Ilana H. Eisenstein, Esquire
Office of the United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899

        <u>Counsel for Appellee</u>

---

OPINION

---

AMBRO, <u>Circuit Judge</u>

Appellant Luke Gatlin was convicted of one count of possession of a firearm by a career offender in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, he argues that the District Court erred in denying his motions that cumulatively seek (1) to suppress the evidence of the gun, (2) to compel disclosure of the identity of the confidential informant involved in his case, and (3) for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). We affirm the District Court's orders.[1]

I.

On February 9, 2006, around 7:00 p.m., Wilmington Police Detective Joseph Leary received a phone call from a known and reliable confidential informant telling him that a man was walking in the area of 30th and Market Streets in Wilmington with a

---

[1]The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

pistol in his front right coat pocket. The informant described this individual as a "light skinned black male, approximately five foot eight, wearing a Chicago Cubs hat, black hooded jacket and black blue jeans [and] had a hand gun in his right front coat pocket." App. 17-18. Detective Leary then called police dispatch to have this message relayed to any officers in that vicinity.

Delaware Probation and Parole Officer Brian Kananen and Wilmington Police Detective Joshua Burch responded to this call and went to the corner of 30th and Market Streets. When they arrived, there were between 15 and 30 people at the intersection and, though the sun had already set, the area was well-lit. App. 84. Among this crowd, the officers spotted a man wearing a blue Cubs hat who matched the informant's description standing at the passenger window of a red Jeep Grand Cherokee. App. 36. The officers got out of their patrol car, Detective Burch drew his gun and ordered the man down on the ground, and Officer Kananen handcuffed the man behind his back. The latter then patted the man down for weapons, and found a handgun in his right front coat pocket. App. 37. At that point, Officer Kananen recognized the individual as Luke Gatlin, based on their previous interactions in the Delaware probation system.

Gatlin was arrested and charged as noted above. Before his trial, Gatlin moved to suppress the evidence of the gun, arguing that the officers lacked reasonable suspicion to stop and search him based solely on the tip that he was carrying a concealed handgun. The District Court denied this motion because it is a crime in Delaware to carry a

3

concealed deadly weapon without a license. 11 Del. C. § 1442.

Gatlin also moved pre-trial to reveal the identity of the informant based on his justification defense theory. Gatlin asserted that, shortly before the tip was made, he had been robbed at gunpoint and managed to wrest the gun away from his robber. If the informant were the same person as the robber, he argued, this would buttress his defense theory. The District Court denied this motion, finding that this theory was too attenuated to defeat the Government's privilege to conceal the informant's identity.

Gatlin was found guilty after a jury trial. He then moved for a judgment of acquittal, under Federal Rule of Criminal Procedure 29(c), arguing that the Government had failed to prove that the gun had traveled in interstate commerce because it had not certified one of its witnesses as an expert. The District Court denied the motion, finding that Gatlin had waived this argument by not objecting to the witness's qualifications at trial. Furthermore, the Court concluded that, even barring this witness's testimony, there would still be sufficient evidence to support the jury's verdict.

II.

A.   Motion to Suppress

Gatlin first argues that the District Court erred in denying his motion to suppress the handgun. Specifically, he claims that the tip did not indicate he was engaged in criminal activity because it contained no information about whether he was licensed to carry a concealed weapon. He contends further that the police had no basis to search

him for weapons because, although they had reason to believe he was armed, they had no reason to believe he was dangerous.

"'We review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts.'" *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

A brief, investigatory stop is valid under *Terry v. Ohio*, 392 U.S. 1 (1968), "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). When the officer has "reason to believe that he is dealing with an armed and dangerous individual," he may then conduct a "reasonable search for weapons for the protection of the police officer." *Terry*, 392 U.S. at 27. The stop and search are thus independent actions, and each requires its own justification. *Arizona v. Johnson*, 129 S.Ct. 781, 784 (2009). In determining whether there was reasonable suspicion, we consider the totality of the circumstances. *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). If either the stop or the search is improper under *Terry*, then the remedy is to suppress any evidence obtained from that search. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010).

Because it is undisputed that the tip was reliable, the first question before us is whether the officers had reasonable suspicion to stop Gatlin based solely on the

5

information that he was carrying a concealed handgun. This case is factually different from most, in that it lacks other factors normally present that suggest that the defendant was engaged in criminal activity (*e.g.*, presence in a high-crime area late at night, or attempting to flee from the police, *see Valentine,* 232 F.3d at 356-57). Nonetheless, the police had reasonable suspicion based solely on the tip because, while it is possible to have a concealed handgun license, carrying a concealed handgun is presumed to be a crime in Delaware, as "[t]he burden is upon the defendant to establish that he had a license to carry [the] concealed . . . weapon." *Lively v. State*, 427 A.2d 882, 884 (Del. 1981) (quoting *Modesto v. State*, 258 A.2d 287, 288 (Del. Super. 1969)). Thus, carrying a concealed handgun is a *prima facie* crime in Delaware to which possessing a valid license is a defense. *Id.*

This presumption under Delaware law distinguishes Gatlin's case from our decision in *United States v. Ubiles*, 224 F.3d 213, 218 (3d Cir. 2000). *Ubiles* presented a factually similar scenario – officers conducted a stop and frisk based solely on a tip that an individual was armed – in which we held that the tip did not supply reasonable suspicion because the arresting officers "had no reason to believe that Ubiles was 'involved in criminal activity.'" *Id.* That is because "[i]t is not necessarily a crime to possess a firearm in the Virgin Islands." *Id.* Put simply, the Virgin Islands does not apply Delaware's presumption of illegality. *See United States v. McKie*, 112 F.3d 626, 630 (3d Cir. 1997) (stating that, under Virgin Islands' law, "[t]he government must

prove the absence of a firearms license"). Here, because it is presumed that concealed handgun bearers are violating the law, the officers had reasonable suspicion based solely on the tip that someone matching Gatlin's description was carrying a handgun in his coat pocket.

Having determined that there is a presumption of illegality based on the tip, it necessarily follows that the officers had reasonable suspicion not only to stop Gatlin but also to search him. Because Gatlin was armed and presumably committing a crime, the officers had reasonable suspicion that he was armed and dangerous, and thus they were justified under *Terry* to conduct a search for weapons.[2] Thus, we conclude that the District Court did not err in denying Gatlin's motion to suppress.

B.      Confidential Informant's Identity

Gatlin argues that the identity of Detective Leary's informant is central to his defense. He suspects that the informant might be the same individual, Daquon Anderson, who allegedly robbed him at gunpoint shortly before he was arrested at 30th and Market Streets. If the police revealed the informant's identity and validated this suspicion, Gatlin argues this would lend credence to his defense theory.

"We review the District Court's refusal to order disclosure of [a] confidential informant's identity for abuse of discretion." *United States v. Johnson*, 302 F.3d 139,

---

[2]      While we are troubled by the manner in which the search was conducted – at gunpoint, ordering Gatlin to the ground, and then handcuffing him behind his back before even asking him a single question – this issue is not before us on appeal.

7

149 (3d Cir. 2002). While the Government has a privilege to withhold the identity of confidential informants, "[a] defendant can overcome this privilege if he demonstrates that disclosure 'is relevant and helpful to [his] defense' or 'is essential to a fair determination' of his guilt." *Id.* (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957)).

Gatlin did not carry his burden of demonstrating that disclosure was relevant to his defense; rather, his defense theory merely indicated a hope that the informant's identity would be helpful. *See United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993) (quoting *Roviaro*, 353 U.S. at 60-61) ("A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be 'relevant and helpful to the defense ... or is essential to a fair determination' of the case"). Even if Anderson were revealed as the informant, this would not prove that Anderson had robbed Gatlin and that the latter had obtained the handgun while defending himself in that robbery. Accordingly, we conclude that the District Court did not abuse its discretion in denying Gatlin's motion to disclose the informant's identity.

C.     Sufficiency of the Evidence

Gatlin argues that the Government, by relying on the testimony of an ATF agent who was not certified as an expert, failed to establish that Gatlin's handgun had traveled in interstate commerce. "In reviewing a jury verdict for sufficiency of the evidence, we

8

must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *Brown*, 3 F.3d at 680 (internal quotation marks omitted).

Here, even without the testimony of the ATF Agent, there was substantial evidence from which the jury could have found that the gun had traveled in interstate commerce: the ATF database indicated that the gun had been purchased in Virginia, and no handguns have been manufactured in Delaware in nearly 100 years.

\* \* \* \* \*

For the reasons discussed above, we affirm the District Court's orders.