

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2007

# USA v. Powell

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Powell" (2007). *2007 Decisions.* Paper 1690.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1690

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-1024

———————

UNITED STATES OF AMERICA

v.

DEWEY POWELL,
Appellant

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 03-cr-00276)
District Judge: Honorable William J. Nealon

———————

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2006

Before: RENDELL and AMBRO, Circuit Judges
and BAYLSON*, District Judge.

(Filed February 1, 2007)

———————

OPINION OF THE COURT

———————

* Honorable Michael M. Baylson, District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.

BAYLSON, *District Judge*.

Following a jury trial, Appellant-Defendant Dewey Powell ("Powell") was found guilty of illegal possession of firearms under 18 U.S.C. § 922(g)(1), possession of firearms by a convicted felon. Because Powell had three prior felony convictions, he was sentenced, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to 180 months of imprisonment, a $100 assessment plus three years of supervised release.

## I. Jurisdiction

This Court has jurisdiction over the appeal from the judgment of conviction and sentence pursuant to 28 U.S.C. § 1291.

## II. Issues on Appeal

Powell raises three issues on appeal:

1. The search and seizure of two handguns, two rifles and a pipe bomb from a house he co-owned and shared with a woman violated the Fourth Amendment of the United States Constitution.

2. The evidence was insufficient to sustain the conviction.

3. Powell's sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), was unconstitutionally imposed because the District Judge refused to require the government to prove his prior convictions beyond a reasonable doubt to the jury.

The facts relevant to each of these issues are somewhat compartmentalized and will be discussed separately.

## III. Search and Seizure Issue

The District Court held a hearing on Powell's Motion to Suppress Evidence on August 11, 2005, at which time Sheriff's Lieutenant Karen Flexer and Bonita Tertel both testified. Ms. Tertel, the live-in girlfriend of Powell, had sought and received a temporary Protection from Abuse Order ("PFA") from Carbon County officials. Lieutenant Flexer and others served it on the residence where Powell and Tertel lived on March 6, 2003, located at 108 South Fourth Street, Lehighton, Pennsylvania. When Lieutenant Flexer, accompanied by other sheriff deputies, arrived at the house, Ms. Tertel let them in. Powell was seated on the first floor. Lieutenant Flexer explained to him that the PFA was a civil procedure, that there was a hearing date, and she would have to evict him from the house. She also related to Powell that there was a handgun listed in the PFA which Powell would have to relinquish to her. App. 36-37. Powell denied that there were any weapons in the house, but when she repeated that he had to relinquish all weapons, Powell then said that although there were "weapons" in the house, they belonged to his friend, Kevin Locher. App. 37. Powell still insisted that there was no handgun in the house. App. 38. Powell showed the deputies where two rifles were located. App. 39.

At various points the witnesses at the suppression hearing referred to "firearms" or "weapons" or "guns" without specifying whether they were rifles or handguns. Ms. Tertel was upset about weapons in the house and "she asked if we [deputies] could help find them." App. 40. Lieutenant Flexer agreed to help look for them. The deputies

3

had found some handgun ammunition in plain view on a dresser on the upstairs bedroom.[1] App. 41. While the deputies were in the house, a device which they thought might be a homemade explosive was discovered. The deputies then met in the upstairs bedroom, with certain Lehighton police officers who had come to the house, and the handguns were found under the bed. App. 43. The handguns were confiscated and turned over to the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The suppression hearing testimony does not specifically detail how the handguns were located under the bed.

Lieutenant Flexer further testified about PFA procedure, acknowledged that it did not give her office permission to search the house for weapons, but she had done so because Ms. Tertel had complained in her PFA application about a weapon being in the house, and the sheriff's deputies were trying to help her find it. App. 45. Ms. Tertel was apparently upset about the homemade explosive and told one deputy she did not want any weapons in the house. App. 45.

In subsequent questioning by the District Judge, Lieutenant Flexer testified that she believed Ms. Tertel had given her permission to enter the house and search for weapons because Ms. Tertel had said there were handguns in the house, but did not know where Powell had hidden them. App. 59-60. Lieutenant Flexer further explained the chronology of the facts leading to discovery of the suspected homemade explosive device. Ms. Tertel said she had no idea that such a device was in the house. She did not

---

[1]Although possession of ammunition by a convicted felon is also a violation of § 922(g)(1), Powell was only indicted for possession of firearms, the handguns and rifles.

4

have any knowledge that Powell had made the device.

Ms. Tertel testified on behalf of Powell with significant contradictions to Lieutenant Flexer's testimony. Although Ms. Tertel denied giving Lieutenant Flexer and her law enforcement colleagues permission to search for weapons, she did admit saying that there was one [weapon] and "I did want it out of the house but I didn't give anybody permission to search." App. 71. Ms. Tertel admitted telling the sheriff's deputies when they arrived "there should be a gun in the house." App. 73. In questioning by the District Judge, Ms. Tertel acknowledged that she had written on the PFA application, in response to a question about weapons, that Powell had used or threatened to use "handguns" against Ms. Tertel or her child. App. 75. In her testimony, Ms. Tertel said that reference was a mistake, and although Powell had a handgun, he did not threaten her or her child with it. App. 75-76.

The day after the search, March 7, 2003, Ms. Tertel gave the police a handwritten statement (Ex. G-2) that she had given consent for the search. App. 87. Ms. Tertel's testimony denying that she gave such permission is markedly inconsistent.

At the conclusion of the hearing, see App. 91, the District Judge made findings and weighed the credibility of the testifying witnesses. The District Judge specifically found, in light of contradictions between Lieutenant Flexer and Ms. Tertel, that Lieutenant Flexer was credible and Ms. Tertel was not. App. 94. He concluded that Ms. Tertel's conduct "was consent for them [the officers] to come into the house and to obtain and confiscate the weapons about which she [Ms. Tertel] was concerned." App. 92.

5

The District Judge also found that, despite her testimony to the contrary, Ms. Tertel had in fact assisted the officers in the search, helping them to locate the handguns, which further demonstrated consent, and that Ms. Tertel had admitted this in her handwritten statement. App. 93.

Powell claims that the District Court failed to fully analyze the totality of the circumstances surrounding whether Ms. Tertel gave free and voluntary consent to officers to search the home she shared with Powell.

The District Court's ruling on this issue, whether police violated Powell's rights under the Fourth Amendment when they searched his home, is reviewed for "clear error as to the underlying facts" but plenary review as to its legality in light of the facts. United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003). We cannot discern any clear error as to the District Court's finding on the underlying facts. U.S. v. Burton, 288 F.3d 91 (3d Cir. 2002), states the rule on the legal issue:

> "[I]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973).

The consent in this case was given by Ms. Tertel. There is no dispute that she lived in the house with Powell, shared the bedroom where the handguns and ammunition were found, and there is ample factual support for the District Judge's conclusion that she gave consent. See Burton, citing Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (holding that a warrantless search does not violate the Fourth Amendment if police officers

6

conclude reasonably, although incorrectly, that the person giving consent has common authority over the premises).

## IV.     Sufficiency of the Evidence

As for the second issue raised by Powell, that there was insufficient evidence to support a finding that Powell was in possession of the firearms found in the home, we are required to view the evidence in the light most favorable to the government and to affirm if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993).  Powell had stipulated to his prior convictions and that the firearms had traveled in interstate commerce.  The government tried this case on a theory of constructive possession, as to which the district court correctly charged the jury.

The evidence at trial was more detailed than at the suppression hearing. Lieutenant Flexer once again testified about her service of the PFA Order on Powell at his home.  According to her trial testimony, Powell told her that any weapons in the house belonged to his friend Kevin Locher.  Lieutenant Flexer went with Powell to the second floor bedroom where she retrieved two rifles, which Powell located in his bedroom and turned over to her and then left the premises.  App. 170, 176.  After he left, at the request of Ms. Tertel, the sheriff's deputies and members of the Lehighton Police Department searched the couple's home for firearMs.

Another deputy, Tammy Easterly, testified that she had seen Powell kick something under the bed when she was in the room with Powell, although she did not see

7

or investigate what he was kicking at that time. App. 189-195. Easterly testified that after Powell had left the house, she went back upstairs, located and searched the duffle bag under the bed in the bedroom, and found two handguns. App. 186-189. Her description of this incident would allow the jury to conclude that Powell was kicking the duffle bag in which the handguns were subsequently found.

Ms. Tertel testified that although there were rifles in the house, she did not know if they belonged to Powell. She did not recall that she had seen Powell with a gun, but acknowledged that she may have said that to the police. App. 195-200. She was generally hostile to the government's attorneys questions. Although her testimony was vague and contradictory, she did testify that on March 3 Powell said, "where is my gun?" App. 218. She also testified that on one occasion, inferentially also on March 3, Powell had been looking for a gun, and had a gun in his waistband. App. 204. There was also testimony that she had previously told the police that Powell had a hand gun on March 3, App. 209, 203, but she could not be sure of the facts because the incident was two and one-half years prior. One of the police officers testified Powell admitted to owning two hunting rifles. App. 226.

Powell's friend Kevin Locher testified that he owned the rifles that had been found in the house, and he had stored other guns in Powell's house in 2003. App. 236-242. However, his testimony was contradicted on rebuttal by Eugene Tertel, son of Bonita Tertel, who had observed Powell with a handgun in the fall of 2002, and in possession of a rifle in 2002, which was before Locher had stored them in Powell's house, according to

8

Locher's testimony. App. 242-246.

Powell contends this evidence raised sufficient doubts about whether the evidence was sufficient to prove Powell had the intention to exert dominion and control over the firearms found in his home.

Proof of ownership of, or residence in, the home in which weapons are found is insufficient to establish that Powell exercised dominion and control over the firearms, U.S. v. Brown, 3 F.3d at 683 (3d Cir. 1993). However, such ownership combined with additional evidence may be sufficient to establish constructive possession. Id.; see also United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999).

There was sufficient evidence at the trial, considering Powell's conduct on March 3 and 6, including finding the handguns in Powell's residence under the bed in the bedroom he shared, and Ms. Tertel's testimony that on March 3 she had seen Powell with a gun, and Powell had asked her, "where is my gun?" This allowed the jury to conclude Powell acknowledged the possession of two rifles and two handguns. Also, the fact that Powell had surrendered the rifles to Lieutenant Flexer when she entered the house was additional circumstantial evidence to show Powell's admission of gun possession because the jury may have discredited Kevin Locher's testimony that he owned the rifles.

We reject Powell's arguments that the testimony reviewed above is insufficient to prove that he exercised dominion and control over the firearms located in the house. The jury was entitled to, and probably did, disbelieve Ms. Tertel and Mr. Locher. The overall evidence, including Powell's prior statements to Ms. Tertel and the police on March 6,

9

support the jury's verdict.

### V.    Powell's Argument Concerning the Prior Convictions Is Legally Unfounded

At trial, there was a stipulation that Powell had a prior conviction for a crime punishable by imprisonment for a term exceeding one year.  App. 104.  There was no other testimony at trial about Powell's prior convictions.  These were disclosed in the presentence report and the District Judge acted on them in imposing the sentence under § 924(e).  The legal contention is subject to *de novo* review.  United States v. Weaver, 267 F.3d 231, 250 (3d Cir. 2001).

Powell's prior convictions need not have been submitted to the jury.  Appellant argues that the holding of Almendarez-Torres v. United States, 523 U.S. 224 (1998), that prior convictions may be used to increase the penalty applicable to a defendant without being included in the indictment or submitted to a jury, should not to apply to predicate offenses under the ACCA.  Appellant points out that Almendarez-Torres has been subject to recent criticism and may no longer be good law.  This latter argument is not convincing.  Apprendi v. New Jersey, New Jersey, 530 U.S. 466 (2000), expressly reaffirms Almendarez-Torres with respect to prior convictions, see Apprendi, 530 U.S. at 490.  This Court has held that such a submission is not required with respect to the "Three Strikes" requirement under 18 U.S.C. § 3559(c).  Weaver, 267 F.3d at 250.  Although not addressing the issue directly, this Court has also upheld a district court decision using prior convictions to enhance a defendant's sentence under the ACCA.  See U.S. v. Jones,

332 F.3d 688, 694 (3d Cir. 2003). Other circuits have held that section 924(e) of the

ACCA is a sentencing factor that falls within the prior conviction exception. See, e.g.,

U.S. v. Burgin, 388 F.3d 177, 184-87 (6th Cir. 2004); United States v. Santiago, 268 F.3d

151, 155 (2d Cir. 2001).

**VI.     Conclusion**

For the above-stated reasons, we will affirm the judgment and conviction.