# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1760

_____

Carroll James Flowers,                    *
                                          *
                Appellant,                *
                                          *
        v.                                *
                                          *
Marty C. Anderson, Warden, United         *
States Medical Center for Federal         *
Prisoners,                                *
                                          *
                Appellee.                 *

_____                 Appeals from the United States
                            District Court for the
No. 11-1764                 Western District of Missouri.

_____

Christopher Michael Dannar,               *
                                          *
                Appellant,                *
                                          *
        v.                                *
                                          *
Marty C. Anderson, Warden, United         *
States Medical Center for Federal         *
Prisoners,                                *
                                          *
                Appellee.                 *

_____

Submitted: September 23, 2011
Filed: November 16, 2011
_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.


Carroll Flowers and Michael Dannar, inmates at the United States Medical Center for Federal Prisoners ("Medical Center") in Springfield, Missouri, petitioned for writs of habeas corpus under 28 U.S.C. § 2241. They alleged that their due process rights were violated when the institution imposed discipline, including revocation of good time credits, for possession of a weapon. The district court[*] dismissed the petitions, and we affirm.


As of July 2009, Flowers and Dannar were serving federal prison sentences at the Medical Center. They were two of eight inmates assigned to Room 222 in Ward W02 (8-2) of the facility.


During a search of Room 222 on July 30, 2009, a staff member discovered two homemade, ice-pick type weapons. Each weapon was made from a metal rod and sharpened to a point. The weapons were found between an electrical conduit and the wall above the entry door to Room 222 in what the institution's hearing officer described as "the common area of the room." The record does not include a diagram

_____

[*]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

-2-

of Room 222 or describe it in any detail. The inmates characterize it as "an eight man dorm room."

The staff member reported that he noticed two lockers on one side of the entry door to Room 222. One locker was short, the other tall. They were positioned right next to each other, and both locker tops were dented, "like someone had been standing on them." The staff member climbed atop the taller locker, felt around the electrical conduit, "against the wall, just below the ceiling," and identified something loose. He used a pen to push one of the weapons free from between the wall and the conduit. The staff member then used a ladder to search the other side of the doorway, and he located a second weapon between the wall and the conduit.

The staff member completed an incident report, and the matter was referred to a Unit Discipline Committee. The incident report said that during a search of Room 222, the staff member discovered two weapons "hidden behind electric conduit, in the ceiling above the entry door." The committee referred the charge to the Disciplinary Hearing Officer for further hearing, with a recommendation that the charge be expunged. The committee's view was that the weapons were found in a common area, and that all inmates in an adjacent dormitory had as much access to the area as did Flowers and Dannar.

The hearing officer convened a hearing ten days later. Flowers and Dannar waived staff representation. Both inmates denied any knowledge of the weapons. They declined to submit documentary evidence or to request witnesses. As far as we can discern, no evidence was presented regarding the proximity of another dormitory to Room 222 or the accessibility of Room 222 to inmates who are not assigned to that room.

The hearing officer found that the greater weight of the evidence established that both inmates had committed the prohibited act of possession of a weapon. The report for each inmate reasoned as follows:

> The two weapons were found in the common area of Room 222, where all occupants of the room had access to them. All occupants of the room are responsible for all items found in the common area of the room. No special tools were required to retrieve the weapons. The reporting staff member did use a ladder to retrieve one of the weapons[;] however it is believed that the weapon could be recovered without the ladder.

As sanctions, the hearing officer ordered the loss of 41 days of good conduct time, 30 days in disciplinary segregation, and loss of commissary and telephone privileges for 90 days.

After exhausting administrative remedies, Flowers and Dannar filed petitions for writs of habeas corpus under 28 U.S.C. § 2241, alleging that the sanctions deprived them of liberty without due process of law, because there was no evidence that they committed the charged offense. To augment the incident report and the decision of the hearing officer, the warden presented evidence that when inmates arrive at the Medical Center, they are given a copy of a handbook that includes the following statement:

> It is the inmate's responsibility to check his living area immediately after being assigned there, and to report all damage to the Correctional Officer, Case Manager, or Counselor. An inmate may be financially liable for any damage to his or her personal living area and is responsible for any contraband found within his personal living area.

A captain who oversees correctional supervision at the Medical Center declared that Bureau of Prisons Program Statement 5270.07 and a federal regulation provide

that "inmates have the responsibility to keep their areas free of contraband." The Program Statement is not in the record or available through the Bureau's website. The regulation, entitled "Inmate rights and responsibilities," states that among an inmate's responsibilities is "to keep your area free of contraband." 28 C.F.R. § 541.12 (2009).

The district court, adopting a report and recommendation of a magistrate judge, dismissed the petitions. The court determined that "under the very low standard dictated by the Supreme Court" in *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), there was "some evidence" to support the decisions of the hearing officer, and that the decisions thus complied with the requirements of due process. We review the district court's dismissal of a § 2241 petition *de novo*. *See Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010).

In *Hill*, the Supreme Court addressed whether findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process. The Court observed that while the inmate has a strong interest in avoiding arbitrary deprivations, that interest "must be accommodated in the distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." 472 U.S. at 454 (internal quotation omitted). After citing the institution's legitimate interests, including that of "avoiding burdensome administrative requirements that might be susceptible to manipulation," the Court held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id*. at 455. This "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id*. If there is "any evidence in the record" that could support the finding

of the disciplinary authority, then the sanctions comport with due process. *Id*. at 455-56.

The Court in *Hill* upheld a state prison's revocation of good time credits for three inmates who were seen fleeing the scene of an assault, despite the conclusion of the state court that the evidence was insufficient to support an inference that more than one of the inmates had struck the victim. The Court concluded that while the evidence "might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant," the record was not so devoid of evidence as to make the findings of the institution without support or otherwise arbitrary. *Id*. at 457. Flowers and Dannar disagree with the "some evidence" standard announced in *Hill*, but acknowledge that it is binding on this court.

The warden here argues that all inmates assigned to Room 222 at the Medical Center are collectively responsible for weapons found in that room. He contends that Flowers and Dannar had a responsibility under prison rules to keep the area free of contraband, and that the discovery of weapons in a common area of their room thus constitutes "some evidence" that they possessed the weapons. This court accepted a collective responsibility theory in *Mason v. Sargent*, 898 F.2d 679 (8th Cir. 1990), where discipline was imposed on one inmate based on evidence found in a locker box that he shared with another inmate who admitted culpability. *Id*. at 680; *see also id*. at 680 (Heaney, J., dissenting) ("I would . . . have no trouble in concurring if the prison rules made Mason responsible for any items found in the joint locker which violated prison rules, but the prison rules do not so provide."). Other courts likewise have relied on collective culpability for contraband found in a shared area as "some evidence" to support sanctions in prison discipline cases. *See Shelby v. Whitehouse*, 399 F. App'x 121, 122 (7th Cir. 2010); *Flannagan v. Tamez*, 368 F. App'x 586, 588 & n.5 (5th Cir. 2010); *Santiago v. Nash*, 224 F. App'x 175, 177 (3d Cir. 2007); *Hamilton v. O'Leary*, 976 F.2d 341, 344-45 (7th Cir. 1992).

Flowers and Dannar do not contest the general proposition that an inmate's failure to keep his living area free of contraband may constitute some evidence of a violation when contraband is found in that area. Their challenge is narrower. The inmates argue that because the weapons were found *outside* of the area for which they were responsible, and that they could not access the location without violating a rule against entering an "unauthorized area," the discovery of the weapons in this case was not evidence that justified revocation of good time credits.

We conclude that the record includes "some evidence" that the staff member discovered weapons in a common area of Room 222 for which Flowers and Dannar shared responsibility. The incident report reflects that the weapons were found inside Room 222, above the entry door. The inmates concede that Room 222 is an eight-man dorm room to which they were assigned. While the inmates assert that the weapons were found "above the ceiling," and that inmates have no responsibility or authority to "inspect the area above the ceiling tiles," there is some evidence that the weapons were found below the ceiling in an area that could be accessed by standing on a locker. A message from the staff member, reprinted in the hearing officer's decision, states that the weapons were found "against the wall, just below the ceiling." There was circumstantial evidence that the weapons had been placed behind an electrical conduit by someone climbing on two lockers, which were dented on top and arranged below the place of discovery in a stair-step formation. The staff member recovered one of the weapons by standing on the lockers.

On this record, we are not convinced that the hearing officer lacked any evidence to conclude that the weapons were found in a common area of the room to which Flowers and Dannar were assigned. There is evidence to refute the inmates' contention that the weapons were above the ceiling tiles, and the inmates presented no evidence that the location between the conduit and the wall, below the ceiling, is an "unauthorized area" that inmates cannot reach under prison rules. We thus need

not address how the prison may proceed if contraband is discovered in an area that is outside an inmate's living area and off-limits to inmates.

The judgment of the district court is affirmed.

_____