**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-1450

_____

Travis Denny, Appellant

v.

Warden Paul Schultz; James Waterfield

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-10-cv-00371)
District Judge:  Honorable Renee M. Bumb

_____

Argued: September 19, 2012

Before: SLOVITER, RENDELL, and HARDIMAN, <u>Circuit
Judges</u>

(Filed:  February 15, 2013)

_____

Syed A. Huda (Law Student) [Argued]
Stuart T. Steinberg
Sarah L. Wyatt
Dechert LLP
Philadelphia, PA  19104
Attorneys for Appellant

Paul A. Blaine [Argued]
Office of United States Attorney
Camden, NJ  08101

James B. Clark, III
Office of United States Attorney
Newark, NJ  07102
Attorneys for Appellees

_____

OPINION

_____


SLOVITER, Circuit Judge.


Appellant Travis Denny, who was an inmate at the Federal Correctional Institution ("FCI") at Fairton, New Jersey, challenges the Disciplinary Hearing Officer's ("DHO") findings upheld by the District Court.  The DHO found that Denny possessed weapons in violation of a prison regulation and sanctioned him with the forfeiture of forty days of good time credit and imposition of sixty days in disciplinary segregation.  During a search, prison officials

discovered homemade weapons hidden in Denny's cell. Based solely on the presence of the weapons in his two-inmate cell, Denny was sanctioned as set forth above. He subsequently submitted a petition for a writ of habeas corpus to the District Court pursuant to 28 U.S.C. § 2241 arguing, *inter alia*, that prison officials violated his Fourteenth Amendment due process rights by requiring him to forfeit the good time credits. The District Court *sua sponte* dismissed the petition, and Denny appealed.

## I.     Background

The factual record in this appeal was not fully developed because the District Court acted *sua sponte* in dismissing the case pursuant to 28 U.S.C. § 2243 before the BOP had entered its appearance and before any discovery had taken place. Accordingly, the record before this court is limited to the materials submitted by Denny with his habeas petition.

Denny shared his cell with one other inmate. During a routine search of the cell in March 2009, a corrections officer found a six and one-half inch long pointed weapon in the duct work of the vent above the sink between Denny's cell and an adjacent cell. "The shank appeared to be made out of fencing that had been straightened, it had a black electrical tape grip, a piece of white shoelace for a lanyard and a length of dental floss tied on to the lanyard." App. at 42. Upon further inspection of the vent, the officer "noticed a false bottom in the duct made out of covers from file folders that had been cut and taped together to fit the length and width of the duct between [Denny's cell and the adjacent cell]." *Id.* When the false bottom was removed, the officer found another

3

sharpened weapon similar to the first one. The second weapon was seven inches long and was made out of fencing with a grip made out of electrical tape and a black shoelace lanyard attached.[1]

Federal Bureau of Prisons ("BOP") Program Statement 5270.07, *Inmate Discipline and Special Housing Units*, provides that it is an inmate's responsibility to keep his or her area free of contraband. *See* 28 C.F.R. § 541.12 (2008). Relying upon that Program Statement, the DHO of FCI Fairton found that Denny had committed the prohibited act of "Possession of a Weapon," in violation of BOP Code 104.[2] App. at 44. The DHO sanctioned Denny with sixty days in disciplinary segregation and the forfeiture of forty days good time credit.[3] According to Denny, both he and his cellmate

---

[1] Denny asserts that the two weapons were also accessible to the inmates in the adjacent cell. Appellees state, without support in the record, that there were two inmates in the adjacent cell who "possibly" had access to the area where the weapons were found. Appellees' Br. at 13. According to Denny, however, the adjacent cell may have housed as many as three inmates.

[2] At the time Denny was charged, BOP Code 104 prohibited the act of "[p]ossession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition." *See* 28 C.F.R. 541.13 (2008). There are four categories of prohibited acts under BOP regulations: Greatest, High, Moderate, and Low Moderate. Code 104 is in the Greatest Severity Level Prohibited Acts category.

[3] The DHO's written report is not part of the record in this case, and Appellees state that "Denny did not attach a

4

were charged with possession of a weapon, but the inmates in the adjacent cell, whom he posits may have had access to the weapons, were not charged.

Denny appealed first to the BOP Regional Director and next to the National Inmate Appeals Administrator, both of whom denied the appeals. The National Inmate Appeals Administrator wrote that "the greater weight of the evidence supports the decision, and the sanctions imposed were appropriate for the offense and in compliance with policy." *Id*. at 46.

Denny then filed a *pro se* petition for writ of habeas corpus. The District Court *sua sponte* dismissed the petition, stating that "it is clear that the findings of the [DHO] are supported by 'some evidence,' including the fact that the contraband weapons were found in the duct work of Petitioner's assigned cell." *Id*. at 10. Denny appealed to this court. After he filed a *pro se* opening brief, this court appointed *pro bono* counsel to represent him. Counsel subsequently filed opening and reply briefs on Denny's behalf.[4]

complete copy of the Incident Report to the [habeas] petition, in which an additional statement made by him is recorded." Appellees' Br. at 4 n.3.

[4] Prior to the issuance of a briefing schedule, this court *sua sponte* consolidated this appeal with the factually similar appeal of Jose Hernandez-Zapata. *See Hernandez-Zapata v. Schultz*, No. 11-2018. Denny's *pro bono* counsel acted as amicus counsel on behalf of Hernandez-Zapata in the consolidated appeals. In December 2012, Appellees filed a suggestion of mootness with this court stating that

## II.     Analysis

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 2241, and this court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).  This court reviews a district court's denial of federal habeas relief *de novo* but reviews its factual findings for clear error.  *See Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007).

Denny presents one claim:  that the DHO's disallowance of good time credits violates his due process rights under the Fourteenth Amendment.[5]  Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct.  *See* 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20

---

Hernandez-Zapata had completed serving the custodial portion of his criminal sentence and had been released to United States Department of Homeland Security, Immigration and Customs Enforcement detention.  On February 8, 2013, Appellees informed this court that Hernandez-Zapata had been removed from the United States to Mexico.  Because Hernandez-Zapata has served the custodial portion of his criminal sentence and because he can suffer no collateral consequence or continuing injury from the loss of the forty days good time credit, we conclude that Hernandez-Zapata's claim is now moot.  *See Burkey v. Marberry*, 556 F.3d 142, 148 (3d Cir. 2009).

[5] Denny does not argue that his due process rights were violated when the DHO required him to spend sixty days in disciplinary segregation nor does he argue that the DHO hearings were procedurally defective in any way.

6

(2008). When such a statutorily created right exists, "a prisoner has a constitutionally protected liberty interest in good time credit." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974)).

In evaluating prisoners' due process rights, the court must be sensitive to the "intricate balancing of prison management concerns with prisoners' liberty." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). "Mindful that internal security is a chief concern in prisons, the [Supreme] Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells." *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 527 (1984)). "In order to further the safe, secure, and orderly running of its institutions," the BOP has specifically authorized "searches of inmates and of inmate housing and work areas to locate contraband and to deter its introduction and movement." 28 C.F.R. § 552.10 (2008).

Notwithstanding the prison's interest in ensuring safety and security, a prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff*, 418 U.S. at 557. "[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the

7

record."[6] *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (internal quotation marks and citation omitted). As this court has clarified, the "some evidence" standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding. *See Brown v. Fauver*, 819 F.2d 395, 399 n.4 (3d Cir. 1987).

In *Hill*, a Massachusetts state prison guard opened a door to a walkway to find an inmate bleeding from the mouth and suffering from a swollen eye. The guard observed three inmates jogging together down the walkway, away from the scene. The guard "concluded that one or more of the three inmates had assaulted [the victim] and that they had acted as a group." *Hill*, 472 U.S. at 448. Two of the inmates were found to have planned, aided, or participated in the assault, in violation of prison regulations, despite written statements from the victim that they had not caused his injuries. Based solely upon the testimony and written statements of the guard, prison officials sanctioned each of the two inmates with the forfeiture of 100 days of good time credits as well as 15 days in isolation. The Supreme Court upheld the deprivation of good time credits, noting that "[a]lthough the evidence in this

---

[6] Denny concedes that *Hill*'s "some evidence" standard applies to his claim but argues that "[r]evocation of an inmate's good conduct time must be based on the greater weight of the evidence." Appellants' Br. at 8-9. According to BOP regulations, the DHO's decision "shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.17(f) (2008). Denny, however, points to no conflicting evidence that would trigger the regulation's greater weight of the evidence requirement.

case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457.

The key question in this case is what limit the Due Process Clause places on the constructive possession theory in the prison context. Denny argues that constructive possession in the prison context requires a showing of "dominion and control over the contraband, as well as knowledge of it." Appellants' Br. at 9. While it is true that this is the standard definition of constructive possession in this circuit, Denny does not cite a single case from this court or any other court applying this definition of constructive possession in the prison context.[7] As noted above, the Supreme Court has held that a prison disciplinary decision need only be supported by "some evidence" in order to satisfy due process. *Hill*, 472 U.S. at 454. Though the "some evidence" standard is a standard of appellate review and not a burden of proof, *see Brown*, 819 F.2d at 399 n.4, a reviewing

_____

[7] Judge Rendell asserts that "[i]t is axiomatic that constructive possession requires either the exercise of control or dominion, or the power and intention to exercise dominion or control, over property." Dissenting Op. of Rendell, J. at 1. As with Denny, Judge Rendell does not cite any case applying this definition of constructive possession in the prison context. There are no such cases because to apply this standard of constructive possession in the prison context would place an unreasonably high burden on prison officials, given their significant interest in maintaining safety and security within the prison.

court need only find that the DHO's decision had "some basis in fact" in order to affirm the decision as comporting with the Due Process Clause. *Hill*, 472 U.S. at 456.

Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes "some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits. The Seventh Circuit, applying a probability-based approach, held that a twenty-five percent probability that contraband found in a four-person cell belonged to one of the inmates constituted "some evidence." *See Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992) ("The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical."). More recently, the Eighth Circuit concluded that discovery of two homemade weapons found above the entry door to the common area of an eight-person cell constituted "some evidence" of possession. *See Flowers v. Anderson*, 661 F.3d 977, 980-81 (8th Cir. 2011) (relying on a collective responsibility theory whereby each inmate is collectively culpable for contraband found in a shared area).

The BOP relies exclusively on a theory of collective responsibility to argue that the DHO's findings and sanctions should be upheld. "Through the judicially recognized adaptation of collective responsibility . . . the courts have been willing to accept the probabilities that an inmate has committed a sanctionable prohibited act when no direct evidence links him to it." Appellees' Br. at 8. The BOP further asserts that "[i]ncarcerated inmates are often violent

10

people with demonstrated proclivities for antisocial criminal conduct. Having stripped them of virtually every means of self-protection and outside aid, the BOP is not free to let the state of nature take its course." *Id.* at 8-9.

Not only has the Eighth Circuit endorsed the application of collective responsibility, *see Flowers*, 661 F.3d at 980-81, but a judge of the Seventh Circuit has also suggested that he would subscribe to the collective responsibility theory. *See Hamilton*, 976 F.2d at 347 (stating that "purely collective guilt" might be deemed to satisfy due process in the prison context) (Posner, J., dissenting).

The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07, *Inmate Discipline and Special Housing Units*, which provides that it is an inmate's responsibility to keep his or her area free of contraband. *See* 28 C.F.R. § 541.12 (2008). Although the BOP Program Statement does not define the term "area," a prisoner's area at a minimum includes the prisoner's cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

11

Judge Rendell suggests that "this reasoning would allow prison officials to ignore the clear dictates of *Hill*, and be held to a lesser–indeed, unrelated–standard, *i.e.*, collective guilt, as a substitute for the 'some evidence' of possession requirement." Dissenting Op. of Rendell, J. at 4. She further asserts that "[t]he offense of 'possession' (just like 'killing' and 'assault') is no different in the prison context than outside that context." *Id.* Contrary to Judge Rendell's mistaken understanding of *Hill*, the "some evidence" standard of appellate review dramatically reduces the amount of evidence required for an inmate to be held responsible for offenses such as killing, assault, and possession of a weapon. In *Hill*, prison officials found two inmates responsible for assaulting another prisoner and deprived them each of 100 days of good time credits based solely on the testimony of a guard who observed them and a third prisoner leaving the scene. Such evidence would never be enough to find a defendant guilty of assault in a regular criminal courtroom, yet the Supreme Court held that it was sufficient to satisfy the Due Process Clause.

Furthermore, though the term collective responsibility or collective guilt does not appear in the Supreme Court's opinion in *Hill*, in that case the Court implicitly endorses the application of collective responsibility to facts such as those at issue here. Three inmates were observed leaving the scene of an assault in *Hill*, and two of those inmates were held responsible. In the absence of evidence directly linking any one of the inmates to the assault, the Supreme Court upheld the prison's sanctioning of two of those inmates as being not "without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. In this case, two inmates shared a cell in which two homemade shanks were found, and one of those inmates,

12

Denny, was sanctioned for possession of a weapon. The weapons may have belonged to Denny's cellmate, but in accordance with *Hill*, prison officials did not violate Denny's due process rights when they deprived him of his good time credits. Prison officials here had as evidence not only the presence of the weapons in a two-inmate cell but also the affirmative responsibility, of which the inmates were clearly on notice, that they were to keep their "area" free from contraband.[8] The evidence in this case, therefore, is more substantial than the evidence presented against the inmates in *Hill*.

We are not oblivious to the realities of prison life that might make it difficult or even dangerous for prisoners in shared cells to be affirmatively responsible for policing the illicit activities of their cellmates. Nonetheless, the Due Process Clause requires us to balance a prisoner's liberty interest in good time credits against the prison's interest in

---

[8] Judge Rendell states in a footnote that "[i]f possession in the prison context embraces collective responsibility, as the majority contends, then any cellmate of a prisoner who is authorized to take medication would impermissibly be in 'possession' of another prisoner's medication by virtue of its presence in their shared cell." Dissenting Op. of Rendell, J. at 4 n.7. Assuming, as Judge Rendell does in her hypothetical, that one of the prisoners is authorized to take the medication in question, the medication would not be contraband, and the prisoner's cellmate would have no affirmative responsibility to keep the cell free from such authorized medication. Thus, under this court's opinion, the cellmate would not be impermissibly in "possession" of the medication simply because of its presence in the cell.

13

maintaining a safe and secure environment.  *See Sandin*, 515 U.S. at 478.  Assaults by inmates on both staff and other inmates are a major problem facing the federal prison system. From January to May 2012, there were approximately 215 serious assaults by inmates on other inmates and twelve serious assaults by inmates on prison staff.  *See* Federal Bureau of Prisons, Assault Graphs, *available at* http://www.bop.gov/news/research_projects/assaults/assaults. jsp (last visited Oct. 12, 2012).  For the same time period, there were over 1,000 less serious assaults by inmates on other inmates as well as nearly 700 less serious assaults by inmates on prison staff.[9]  *Id.*  Prison safety concerns are particularly acute where, as here, the contraband consisted of weapons that even Denny's counsel conceded were potentially lethal.

In the case before us, it is undisputed that two homemade shanks were found in a space accessible from within Denny's cell.  This evidence, by itself, constitutes "some evidence" that Denny possessed the weapons in question.  Furthermore, and as noted herein, both the Seventh and Eighth Circuits have held inmates responsible for possession of contraband under circumstances similar to those

---

[9] Under BOP regulations, an inmate commits a Code 101 serious assault for "[a]ssaulting any person, or [for] an armed assault on the institution's perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or accomplished)."  28 C.F.R. § 541.3(b), Table 1 (2012).  An inmate commits a Code 224 less serious assault "when less serious physical injury or contact has been attempted or accomplished by an inmate."  *Id.*

14

present here. We see no reason to diverge from these courts. It follows that the DHO did not violate Denny's due process rights when it found that he had committed the prohibited act of "Possession of a Weapon," in violation of BOP Code 104, and sanctioned him with the forfeiture of forty days good time credit.

### III.    Conclusion

Accordingly, we will affirm the judgment of the District Court

RENDELL, *Circuit Judge*, dissenting.

The Supreme Court has recognized for over three decades that prison inmates have a fundamental liberty interest in good-time credits, which is protected by the mantle of the Due Process Clause. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). An inmate cannot be deprived of good-time credits for a transgression *unless* the prison official's findings are supported by "some evidence" in the record, "some basis in fact." *Hill*, 472 U.S. at 454.

The majority opinion acknowledges that "some evidence" is our standard of review, and that possession of a weapon—here, constructive possession—is the offense that must be established. It is axiomatic that constructive possession requires either the exercise of control or dominion, or the power and intention to exercise dominion or control, over property.[1] Where, as here, the items in question were not in plain view, and the accused did not exclusively occupy the premises, there is no inference of the power and intention to exercise dominion or control, and some other factual support for the accused's connection to the item is required.[2] Thus, as a reviewing court, we can affirm the District Court's dismissal

_____

[1]*See, e.g.*, *United States v. Jenkins*, 90 F.3d 814, 817 (3d Cir. 1996) (recognizing that under federal criminal law, "[c]onstructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence") (quoting *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993)); 1A Kevin O'Malley, *Federal Jury Practice & Instructions, Criminal* § 16:05 (6th ed. 2006) ("A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it."); *Black's Law Dictionary* 1282 (9th ed. 2009) (defining the term as the fact of having "[c]ontrol or dominion over a property without actual possession or custody of it"). The majority suggests that these authorities are not controlling because they do not apply to the prison context, but I cannot imagine that the Prohibited Acts listed by the prison (*see infra* p. 2) are somehow to be defined differently than they are defined as a matter of law; that, too, would have due process implications, as I discuss below.

[2]Courts generally have held that when a defendant "was not in exclusive possession of the premises, it may not be inferred that he knew of the presence of the [hidden contraband] and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference." *United States v. Bonham*, 477 F.2d 1137, 1139 (3d Cir. 1973) (en banc) (quoting *Evans v. United States*, 257 F.2d 121, 128 (9th Cir. 1958)); *see also United States v. Griffin*, 684 F.3d 691, 697-98 (7th Cir. 2012) (affirming a similar approach and

1

of Travis Denny's petition for habeas corpus only if the alleged facts provided "some basis in fact" that supported the prison officials' determination that the inmate actually exercised or intended to exercise dominion or control over the shanks in question.[3] However, relying on an unrelated section of the prison regulations, and substituting "collective responsibility" for individual guilt, the majority opinion sidesteps this standard of review, and sanctions the deprivation of Denny's due process without any evidence to support the determination that he "possessed" the shanks in question.

"Possession" of a weapon is an offense listed under Code 104 of the federal prison regulations, along with over 80 other offenses, including:

| Code | Prohibited acts |
| --- | --- |
| . . . | |
| 100 | Killing |
| 101 | Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate) |
| 102 | Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution with violence |
| 103 | Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity . . .) |
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition |

recognizing it is consistent with the reasoning of sister courts of the Third, Fifth, Ninth, Tenth, and D.C. Circuits).

[3]Under 28 U.S.C. § 2243, a district court may dismiss a habeas corpus petition without an evidentiary hearing if it plainly appears from the face of the petition that the petitioner is not entitled to relief. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). In reviewing such a decision, we are effectively in the position of the district court, and undertake a two-step inquiry, which requires us to determine: (1) whether the petitioner has alleged facts that would suggest he is entitled to relief, and if so, (2) whether an evidentiary hearing is necessary to establish the truth of those allegations. *Id.* at 291 & n.5.

| 105 | Rioting |
| 106 | Encouraging others to riot |

\* \* \*

28 C.F.R. § 541.13 tbl. 3 (2008). Under *Superintendent v. Hill*, in order for Denny to have been deprived of good-time credits based upon "possession" of a weapon, there must have been some evidence in the record, *i.e.*, some basis in fact, to support the prison officials' determination that he exercised, or intended to exercise, dominion or control over the shanks. On the record before us, there is no such evidence—none, not just less than "some evidence."[4]

According to the record, the two shanks were found in an area that Denny did not occupy or exclusively enjoy. The shanks were found in a duct, spanning the distance between his cell and another cell, which was situated behind a vent located above the sink in the cell Denny shared with his cellmate. There were no other indicia to suggest that Denny had any connection or nexus to the shanks that would suggest dominion or control.

Had the items in question been attached to Denny's locker or bed, or even in plain view, there may have been a basis in fact for concluding that he possessed them. A permissible inference of actual exercise of dominion or control, or power and intent to do so, could have been drawn from such facts and there would then be "some evidence" of constructive possession. *See* note 2, *supra*. In *Hill*, the security guard heard a scuffle and upon immediate investigation saw the three inmates leaving the scene of the assault, which—importantly—occurred in an enclosed walkway, where no other individuals, except the victim, were present in the area. 472 U.S. at 456.[5] These facts led to the prison officials' determination

---

[4]It is interesting to note that evidence of *de minimis* probative value, *i.e.*, any evidence that would faintly tend to make an inmate's guilt more probable, does not constitute "some evidence" under this standard of review. *See, e.g., Zavaro v. Coughlin*, 970 F.2d 1148, 1152-53 (2d Cir. 1992) (concluding that prison guard statements that "every inmate" participated in a riot were not plausible and thus could not constitute "some evidence" of an inmate's participation when the inmate was one of a hundred inmates in a large mess hall); *see also* Gerald L. Neuman, *The Constitutional Requirement of 'Some Evidence*,' 25 San Diego L. Rev. 631, 662-63, 678 (1988) (explaining why the term "some evidence" "cannot be taken literally—the smallest quantum of relevant evidence will not suffice").

[5]This is a key fact (one that the majority omits) that clearly provides, in the form of circumstantial evidence, "some evidence" to support the prison officials' determination that the three inmates committed the assault in *Hill*.

3

that the three prisoners were the perpetrators, and the Supreme Court held that these facts satisfied the "some evidence" test on review. *Id.* By contrast, there are no facts that support the determination that Denny exercised, or intended to exercise, dominion or control over the weapons.

Instead of addressing this issue, the majority opinion takes us on a detour to an unrelated provision of the prison regulations that contains twenty-two rights and responsibilities of prisoners. One of these responsibilities advises:

> It is your responsibility not to waste food, to follow the laundry and shower schedule, to maintain neat and clean living quarters, *to keep your area free of contraband*, and to seek medical and dental care as you may need it.

28 C.F.R. § 541.12 (emphasis added).[6] This, the majority opinion urges, provides for "collective responsibility," such that inmates are collectively responsible for contraband if their "areas" are not "free" of such contraband. Thus, the majority opinion reasons, Denny can be deprived of good-time credits for "possessing" the shanks in question because all of the inmates in his "area" are collectively responsible. However, this reasoning would allow prison officials to ignore the clear dictates of *Hill*, and be held to a lesser—indeed, unrelated—standard, *i.e.*, collective guilt, as a substitute for the "some evidence" of possession requirement. This cannot be.

Had the prison officials desired to define "possession" in some broader manner so as to sweep in an inmate's association with any article found in or near his cell, they could have done so. Similarly, they could have dictated that non-adherence to "responsibilities" could result in loss of good-time credits. But they have done neither. Instead, they have prohibited "possession," which would appear—like killing, assault, and the other listed offenses—to require evidence probative of the inmate's commission of the offense in question. There is no basis for ascribing vague concepts of collective responsibility onto the legal meaning of "possession" when a prisoner is the offender. The offense of "possession" (just like "killing" or "assaulting") is no different in the prison context than outside that context.[7]

---

[6]The regulations do not attach any sanction for an inmate's failure to adhere to this responsibility or any of the other delineated responsibilities.

[7]Other sections of the prison regulations buttress the conclusion that no such difference exists, as demonstrated by examining other "possession" offenses listed as Prohibited Acts. One such offense, for example, is "[p]ossession of any . . . drugs . . . not prescribed for the individual by the medical staff" is a prohibited act

To the extent that the majority opinion adopts the view that the standard for "possession" is somehow different in prison, it ignores the fact that the regulations fail to give inmates notice of this alternative standard. Although our Court has "reject[ed] the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions," we nonetheless have recognized that "[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations." *Meyers v. Aldredge*, 492 F.2d 296, 310 (1974).

To say, as the majority opinion does, that all of the inmates share responsibility is not the same as saying that there is "evidence" that a particular inmate "possessed" the weapon.[8] Courts that have said otherwise are just plain wrong.[9] Adopting such reasoning endorses the exact arbitrary deprivation of good-time credits that *Hill* proscribed. 472 U.S. at 455.

The majority opinion urges that it is our job to "balance" a prisoner's liberty interest against the interest of the prison in maintaining the safety and security of inmates and prison staff. But in *Hill*, the Supreme Court settled upon the "some evidence" standard, a standard of review that is admittedly deferential to the prison authorities, so as to achieve the necessary balance between an

---

under Code 113. 28 C.F.R. § 541.13 tbl. 3. Possession by the inmate for whom the medicine is prescribed is permitted, but as to that inmate's cellmate, it constitutes contraband since "contraband" is defined as, *inter alia*, "material prohibited by law, or by regulation," 28 C.F.R. § 500.1, and the regulation prohibits possessing medication that was "not prescribed for the individual." If possession in the prison context embraces collective responsibility, as the majority contends, then any cellmate of a prisoner who is authorized to take medication would impermissibly be in "possession" of another prisoner's medication by virtue of its presence in their shared cell.

[8]One case upon which the majority relies to support its position that "collective responsibility" can constitute "some evidence" is *Flowers v. Anderson*, 661 F.3d 977 (8th Cir. 2011). This case, however, is distinguishable because the inmates there did "not contest the general proposition that an inmate's failure to keep his living area free of contraband may constitute some evidence of a violation when contraband is found in that area"—which is the centrally disputed issue in this appeal. *Id.* at 981.

[9]Similarly, a probability-based approach to possession is also flawed. *See, e.g.*, *Hamilton v. O'Leary*, 976 F.2d 341, 345-46 (7th Cir. 1992). It is essentially akin to speculation; probabilities alone are not "some evidence." *See* note 4, *supra*.

5

inmate's interests and a prison's interests. *See id.* ("Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens."); *see also Wolff*, 418 U.S. at 560-71 (recognizing that consideration of what minimum procedures due process requires in prison disciplinary proceedings, *e.g.*, advance written notice of the alleged violation or a written statement of findings, necessitates balancing "the inmate's interest in avoiding loss of good time against the needs of the prison"). That balance has been struck; the majority's analysis essentially dilutes the "some evidence" standard, effectively resetting the balance in favor of the prison and against the inmate. That is uncalled for.

I, thus, respectfully dissent from the majority's view that Denny has failed to set forth a constitutional violation in his petition for habeas corpus relief. When viewed in the light most favorable to him, the petition clearly reveals that the prison officials' determination that Denny possessed weapons is not supported by "some basis in fact," so as to support the denial of good-time credits. This is sufficient to bar dismissal under 28 U.S.C. § 2243. I would accordingly vacate the District Court's dismissal order.