RENDELL, Circuit Judge,
dissenting.
The Supreme Court has recognized for over three decades that prison inmates have a fundamental liberty interest in good-time credits, which is protected by the mantle of the Due Process Clause. See Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). An *148 inmate cannot be deprived of good-time credits for a transgression unless the prison official’s findings are supported by “some evidence” in the record, “some basis in fact.” Hill, 472 U.S. at 454, 105 S.Ct. 2768.
The majority opinion acknowledges that “some evidence” is our standard of review, and that possession of a weapon — here, constructive possession — is the offense that must be established. It is axiomatic that constructive possession requires either the exercise of control or dominion, or the power and intention to exercise dominion or control, over property.[1] Where, as here, the items in question were not in plain view, and the accused did not exclusively occupy the premises, there is no inference of the power and intention to exercise dominion or control, and some other factual support for the accused’s connection to the item is required.[2] Thus, as a reviewing court, we can affirm the District Court’s dismissal of Travis Denny’s petition for habeas corpus only if the alleged facts provided “some basis in fact” that supported the prison officials’ determination that the inmate actually exercised or intended to exercise dominion or control over the shanks in question.[3] However, relying on an unrelated section of the prison regulations, and substituting “collective responsibility” for individual guilt, the majority opinion sidesteps this standard of review, and sanctions the deprivation of Denny’s due process without any evidence to support the determination that he “possessed” the shanks in question.
“Possession” of a weapon is an offense listed under Code 104 of the federal prison regulations, along with over 80 other offenses, including:
*149 Code Prohibited acts
100 Killing_
101- Assaulting any person (includes sexual assault) or an armed assault on the institution’s secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an _inmate)_
102 Escape from escort; escape from a secure institution (low, medium,' and high security level and administrative institutions); or escape from a minimum _institution with violence_
103 Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act _of Greatest Severity. . .)_
104 Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened _instrument, knife, dangerous chemical, explosive or any ammunition_
105 Rioting_
106 Encouraging others to riot_
28 C.F.R. § 541.13 tbl. 3 (2008). Under Superintendent v. Hill, in order for Denny to have been deprived of good-time credits based upon “possession” of a weapon, there must have been some evidence in the record, ie., some basis in fact, to support the prison officials’ determination that he exercised, or intended to exercise, dominion or control over the shanks. On the record before us, there is no such evidence — none, not just less than “some evidence.” [4]
According to the record, the two shanks were found in an area that Denny did not occupy or exclusively enjoy. The shanks were found in a duct, spanning the distance between his cell and another cell, which was situated behind a vent located above the sink in the cell Denny shared with his cellmate. There were no other indicia to suggest that Denny had any connection or nexus to the shanks that would suggest dominion or control.
Had the items in question been attached to Denny’s locker or bed, or even in plain view, there may have been a basis in fact for concluding that he possessed them. A permissible inference of actual exercise of dominion or control, or power and intent to do so, could have been drawn from such facts and there would then be “some evidence” of constructive possession. See note 2, supra. In Hill, the security guard heard a scuffle and upon immediate investigation saw the three inmates leaving the scene of the assault, which — importantly— occurred in an enclosed walkway, where no other individuals, except the victim, were present in the area. 472 U.S. at 456, 105 S.Ct. 2768.[5] These facts led to the prison *150 officials’ determination that the three prisoners were the perpetrators, and the Supreme Court held that these facts satisfied the “some evidence” test on review. Id. By contrast, there are no facts that support the determination that Denny exercised, or intended to exercise, dominion or control over the weapons.
Instead of addressing this issue, the majority opinion takes us on a detour to an unrelated provision of the prison regulations that contains twenty-two rights and responsibilities of prisoners. One of these responsibilities advises:
It is your responsibility not to waste food, to follow the laundry and shower schedule, to maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it.
28 C.F.R. § 541.12 (emphasis added).[6] This, the majority opinion urges, provides for “collective responsibility,” such that inmates are collectively responsible for contraband if their “areas” are not “free” of such contraband. Thus, the majority opinion reasons, Denny can be deprived of good-time credits for “possessing” the shanks in question because all of the inmates in his “area” are collectively responsible. However, this reasoning would allow prison officials to ignore the clear dictates of Hill, and be held to a lesser— indeed, unrelated — standard, ie., collective guilt, as a substitute for the “some evidence” of possession requirement. This cannot be.
Had the prison officials desired to define “possession” in some broader manner so as to sweep in an inmate’s association with any article found in or near his cell, they could have done so. Similarly, they could have dictated that non-adherence to “responsibilities” could result in loss of good-time credits. But they have done neither. Instead, they have prohibited “possession,” which would appear — like killing, assault, and the other listed offenses — to require evidence probative of the inmate’s commission of the offense in question. There is no basis for ascribing vague concepts of collective responsibility onto the legal meaning of “possession” when a prisoner is the offender. The offense of “possession” (just like “killing” or “assaulting”) is no different in the prison context than outside that context.[7]
To the extent that the majority opinion adopts the view that the standard for “possession” is somehow different in prison, it ignores the fact that the regulations fail to give inmates notice of this alternative standard. Although our Court has “reject[ed] *151 the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions,” we nonetheless have recognized that “[d]ue process undoubtedly requires certain minimal standards of specificity in prison regulations.” Meyers v. Aldredge, 492 F.2d 296, 310 (1974).
To say, as the majority opinion does, that all of the inmates share responsibility is not the same as saying that there is “evidence” that a particular inmate “possessed” the weapon.[8] Courts that have said otherwise are just plain wrong.[9] Adopting such reasoning endorses the exact arbitrary deprivation of good-time credits that Hill proscribed. 472 U.S. at 455, 105 S.Ct. 2768.
The majority opinion urges that it is our job to “balance” a prisoner’s liberty interest against the interest of the prison in maintaining the safety and security of inmates and prison staff. But in Hill, the Supreme Court settled upon the “some evidence” standard, a standard of review that is admittedly deferential to the prison authorities, so as to achieve the necessary balance between an inmate’s interests and a prison’s interests. See id. (“Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.”); see also Wolff 418 U.S. at 560-71, 94 S.Ct. 2963 (recognizing that consideration of what minimum procedures due process requires in prison disciplinary proceedings, e.g., advance written notice of the alleged violation or a written statement of findings, necessitates balancing “the inmate’s interest in avoiding loss of good time against the needs of the prison”). That balance has been struck; the majority’s analysis essentially dilutes the “some evidence” standard, effectively resetting the balance in favor of the prison and against the inmate. That is uncalled for.
I, thus, respectfully dissent from the majority’s view that Denny has failed to set forth a constitutional violation in his petition for habeas corpus relief. When viewed in the light most favorable to him, the petition clearly reveals that the prison officials’ determination that Denny possessed weapons is not supported by “some basis in fact,” so as to support the denial of good-time credits. This is sufficient to bar dismissal under 28 U.S.C. § 2243. I would accordingly vacate the District Court’s dismissal order.

. See, e.g., United States v. Jenkins, 90 F.3d 814, 817 (3d Cir.1996) (recognizing that under federal criminal law, "[c]onstructive possession necessarily requires both 'dominion and control’ over an object and knowledge of that object’s existence”) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir.1993)); 1A Kevin O’Malley, Federal Jury Practice & Instructions, Criminal § 16:05 (6th ed. 2006) ("A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.”); Black's Law Dictionary 1282 (9th ed. 2009) (defining the term as the fact of having "[cjontrol or dominion over a property without actual possession or custody of it”). The majority suggests that these authorities are not controlling because they do not apply to the prison context, but I cannot imagine that the Prohibited Acts listed by the prison (see infra p. 2) are somehow to be defined differently than they are defined as a matter of law; that, too, would have due process implications, as I discuss below.

. Courts generally have held that when a defendant "was not in exclusive possession of the premises, it may not be inferred that he knew of the presence of the [hidden contraband] and had control over them, unless there are other incriminating statements or circumstances tending to buttress such an inference.” United States v. Bonham, 477 F.2d 1137, 1139 (3d Cir.1973) (en banc) (quoting Evans v. United States, 257 F.2d 121, 128 (9th Cir.1958)); see also United States v. Griffin, 684 F.3d 691, 697-98 (7th Cir.2012) (affirming a similar approach and recognizing it is consistent with the reasoning of sister courts of the Third, Fifth, Ninth, Tenth, and D.C. Circuits).

.Under 28 U.S.C. § 2243, a district court may dismiss a habeas corpus petition without an evidentiary hearing if it plainly appears from the face of the petition that the petitioner is not entitled to relief. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 (3d Cir.1991). In reviewing such a decision, we are effectively in the position of the district court, and undertake a two-step inquiry, which requires us to determine: (1) whether the petitioner has alleged facts that would suggest he is entitled to relief, and if so, (2) whether an evidentiary hearing is necessary to establish the truth of those allegations. Id. at 291 & n. 5.

. It is interesting to note that evidence of de minimis probative value, i.e., any evidence that would faintly tend to make an inmate’s guilt more probable, does not constitute “some evidence” under this standard of review. See, e.g., Zavaro v. Coughlin, 970 F.2d 1148, 1152-53 (2d Cir.1992) (concluding that prison guard statements that "every inmate” participated in a riot were not plausible and thus could not constitute "some evidence” of an inmate’s participation when the inmate was one of a hundred inmates in a large mess hall); see also Gerald L. Neuman, The Constitutional Requirement of 'Some Evidence,' 25 San Diego L. Rev. 631, 662-63, 678 (1988) (explaining why the term "some evidence” "cannot be taken literally — the smallest quantum of relevant evidence will not suffice”).

. This is a key fact (one that the majority omits) that clearly provides, in the form of *150 circumstantial evidence, "some evidence" to support the prison officials’ determination that the three inmates committed the assault in Hill.

. The regulations do not attach any sanction for an inmate’s failure to adhere to this responsibility or any of the other delineated responsibilities.

. Other sections of the prison regulations buttress the conclusion that no such difference exists, as demonstrated by examining other "possession” offenses listed as Prohibited Acts. One such offense, for example, is ”[p]os-session of any ... drugs ... not prescribed for the individual by the medical staff” is a prohibited act under Code 113. 28 C.F.R. § 541.13 tbl. 3. Possession by the inmate for whom the medicine is prescribed is permitted, but as to that inmate’s cellmate, it constitutes contraband since "contraband” is defined as, inter alia, "material prohibited by law, or by regulation,” 28 C.F.R. § 500.1, and the regulation prohibits possessing medication that was "not prescribed for the individual.” If possession in the prison context embraces collective responsibility, as the majority contends, then any cellmate of a prisoner who is authorized to take medication would impermissibly be in “possession” of another prisoner’s medication by virtue of its presence in their shared cell.

. One case upon which the majority relies to support its position that “collective responsibility” can constitute "some evidence” is Flowers v. Anderson, 661 F.3d 977 (8th Cir.2011). This case, however, is distinguishable because the inmates there did "not contest the general proposition that an inmate’s failure to keep his living area free of contraband may constitute some evidence of a violation when contraband is found in that area”— which is the centrally disputed issue in this appeal. Id. at 981.

. Similarly, a probability-based approach to possession is also flawed. See, e.g., Hamilton v. O’Leary, 976 F.2d 341, 345-46 (7th Cir.1992). It is essentially akin to speculation; probabilities alone are not "some evidence.” See note 4, supra.